# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01203-COA

**LUKE REED A/K/A LUKE REED, JR. A/K/A**　　　　　　　　**APPELLANT**
**LUKE HUGHES**

**v.**

**STATE OF MISSISSIPPI**　　　　　　　　　　　　　　　　**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/19/2014 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH PRIDGEN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF AGGRAVATED ASSAULT AND FELON IN POSSESSION OF A FIREARM AND SENTENCED TO TWENTY YEARS FOR AGGRAVATED ASSAULT AND FIVE YEARS FOR FELON IN POSSESSION OF A FIREARM, WITH THE SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | REVERSED AND REMANDED - 05/10/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.　A Hinds County jury convicted Luke Reed of aggravated assault and being a felon in possession of a firearm. On appeal, Reed argues (1) that he was entitled to have the charges

against him dismissed because his right to a speedy trial was violated and, (2) in his pro se supplemental brief, that the trial court erred by barring from him impeaching prosecution witness Jimmy Lewis with evidence of Lewis's prior convictions. We agree with the trial court that Reed's right to a speedy trial was not violated; however, Reed was entitled to cross-examine Lewis regarding his prior convictions, and it was reversible error to prohibit him from doing so. Accordingly, we reverse Reed's convictions and remand for a new trial.

## FACTS

### *Luke Reed's Version*

¶2. Luke Reed lived in a tent in a wooded area in Jackson near his friend Jimmy Lewis's house. At trial, Reed testified that on November 3, 2012, he walked to Lewis's house, and the two men sat on the porch and drank liquor together. After a while, Reed left to buy a pint of whiskey. Lewis's girlfriend, Cassandra James, was at Lewis's house when Reed returned with the whiskey. Lewis and James went inside, while Reed remained on the porch.

¶3. Sometime later, two men drove up in a truck and wanted to trade Lewis tools for crack cocaine. Lewis went out to talk to the men, and it "[s]eemed like . . . they got kind of arguing." Lewis then walked back to the porch and asked Reed if he could borrow Reed's pistol,[1] and Reed gave Lewis his pistol. Lewis returned to the car and talked to the men, and the men eventually drove off.

¶4. Lewis then went back inside the house—with Reed's pistol—while Reed remained on the porch and continued drinking. When Reed later got ready to leave, he went inside and

---

[1] Reed admitted that although he is a convicted felon, he carries a pistol because he is homeless and needs it for protection.

2

asked Lewis to return his gun. Lewis had "been drinking or something was wrong with him, he was high or something." Lewis told Reed to get out of his house, so Reed walked back out to the porch. Lewis then told Reed to get off of his porch. Reed responded, "[N]ah, man you got my pistol." Lewis then walked toward Reed with the pistol out and "was fixing to pull [the pistol] up," and Reed "thought [Lewis] was fixing to shoot [him]." Reed testified, "That's when I grabbed him and me and him got to tussling over the pistol. And the shot came out. When [Lewis] fell down, I reached down and got my pistol." Lewis called out for James and yelled that Reed had shot him. But Reed maintains that he did not shoot Lewis; rather, Lewis "shot [him]self." Reed left the house after Lewis was shot.

*Jimmy Lewis's Version*

¶5.    Lewis denied that he ever asked for or took possession of Reed's gun. Lewis and Reed both went to the liquor store, and sometime before or after they returned, James arrived at the house. Lewis did *not* go to pick up James; rather, she came to the house on her own. Lewis then asked Reed to leave so that he and James could spend some time alone. But Reed "got an attitude and said he wasn't going nowhere." Lewis told him, "[C]ome on man, you got to go." Lewis then walked out to the porch. Reed walked out behind Lewis and immediately put the pistol in Lewis's side and quickly shot him once. Lewis recalled that Reed fired only one shot. Lewis then told James that Reed shot him. Lewis gave James his phone and asked her to call an ambulance.

*Cassandra James's Version*

¶6.    James testified at trial that Lewis and another man, whose name she did not know,

3

drove to her home to pick her up on November 3, 2012. On their way back to Lewis's house, Lewis told her that Reed was at his house and had been drinking. When Lewis and James arrived at Lewis's house, Reed seemed "a little irate" and "was walking through the house cursing," "[b]ut he and [Lewis] were playing and joking around." James was afraid because Reed had a gun, so she asked Lewis to ask Reed to leave. Lewis then asked Reed to leave, and he and Reed both walked out to the porch. Lewis said, "[M]an I want you to leave my house, get off my porch." In response, Reed fired his pistol once into the ground to the side of the porch and said, "Man I'll shoot you." Lewis answered, "Man you ain't gone hurt me, that little 22 ain't gone hurt me." Reed then "put [the gun] to [Lewis's] stomach and . . . shot him." Reed then put the gun in his backpack and walked away down the street. James testified that she witnessed the shooting from inside the house.

*Proceedings in the Circuit Court*

¶7.     Reed was arrested on November 3, 2012. On February 6, 2013, he was indicted for aggravated assault and being a felon in possession of a firearm. He was arraigned on March 6, 2013. The same day, he filed a demand for a speedy trial, and his trial was scheduled for July 22, 2013. Reed filed a pro se motion to dismiss on speedy trial grounds in December 2013, and his attorney filed a second such motion in March 2014. The circuit court denied Reed's motions in a detailed written order on June 16, 2014, and the case then proceeded to trial on July 14, 2014. The jury convicted Reed on both counts. The trial court sentenced him to concurrent terms of twenty years in the custody of the Mississippi Department of Corrections (MDOC) for aggravated assault and five years in MDOC custody for felon in

4

possession of a firearm. The trial court subsequently denied Reed's motion for judgment notwithstanding the verdict or a new trial, and Reed appealed.

## DISCUSSION

### I.        Speedy Trial

¶8.      Reed argues that the trial court erred by denying his motion to dismiss the charges against him due to a violation of his constitutional right to a speedy trial.[2] This Court analyzes speedy trial claims under the test set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The *Barker* test "requires a balancing of four factors: (1) length of delay; (2) reasons for the delay; (3) defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant." *Taylor v. State*, 162 So. 3d 780, 783 (¶6) (Miss. 2015). In *Barker*, the Supreme Court instructed that "each case must be considered on an ad hoc basis and that it sought only to identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right to a speedy trial." *Id*. at 783-84 (¶6) (citing *Barker*, 407 U.S. at 530) (internal quotation marks omitted). In addition, the Supreme Court has held that courts must "engage in a difficult and sensitive balancing process" of the four factors because none of the factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533.

¶9.      We will uphold a trial court's factual determination regarding whether delay arose

---

[2] Reed does not assert a violation of his statutory right to a speedy trial. *See* Miss. Code Ann. § 99-17-1 (Rev. 2015).

from good cause if it is based on substantial, credible evidence. *DeLoach v. State*, 722 So. 2d 512, 516 (¶12) (Miss. 1998). "The [S]tate bears the burden of proving good cause for a speedy trial delay, and thus bears the risk of non-persuasion." *Id.*

### A.    Length of Delay

¶10.    "The calculation of the time elapsed begins with the defendant's arrest, indictment, or information." *Stark v. State*, 911 So. 2d 447, 450 (¶7) (Miss. 2005). Reed was arrested on November 3, 2012, and his trial was held July 14, 2014, which amounts to a total time elapsed of 619 days, or 1 year, 8 months, and 12 days. A "delay of more than eight months is presumptively prejudicial" and warrants a "full *Barker* analysis." *McBride v. State*, 61 So. 3d 138, 142 (¶7) (Miss. 2011). But even "when the delay is presumptively prejudicial[,] that does not mean that *actual* prejudice to the defendant exists. Rather, actual prejudice is determined at a different point in the *Barker* analysis." *Taylor*, 162 So. 3d at 784 (¶7) (quoting *Johnson v. State*, 68 So. 3d 1239, 1242 (¶7) (Miss. 2011)).

### B.    Reason for the Delay

¶11.    "Once the delay is deemed presumptively prejudicial, the burden shifts to the [State] to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons." *McBride*, 61 So. 3d at 142 (¶9).

¶12.    As discussed above, Reed was arrested in November 2012, and the court initially set his trial for July 2013. Ultimately, the trial was delayed for approximately one year as a result of a series of continuances. The trial court's order explains that trial was continued several times because Reed asked that his case be placed on the "plea docket," and his case

6

was set for a plea and removed from or continued on the trial docket, but in each instance Reed ultimately decided not to plead guilty. It appears that this pattern by Reed and associated plea negotiations caused delays totaling four to eight months. Delays totaling at least four months appear to be attributable to "docket congestion." Finally, some period of delay appears to be attributable, at least in part, to the fact that in January 2014, "lead counsel for the State . . . was terminated without any prior notice," and co-counsel was scheduled for a leave of absence that same month due to the birth of his first child.

¶13. The Supreme "Court has held repeatedly that '[d]elays caused by overcrowded dockets are not to be weighed heavily against the State.'" *Taylor*, 162 So. 3d at 784 (¶8) (quoting *State v. Magnusen*, 646 So. 2d 1275, 1282 (Miss. 1994)). "While lamentable, it is nonetheless true that courts in the more populated areas of our state"—including Hinds County in particular—"maintain a criminal docket which is so large that delay in bringing defendants to trial is a rueful byproduct." *Id.* at 785 (¶8) (quoting *Travis v. State*, 13 So. 3d 320, 329 (¶28) (Miss. Ct. App. 2008)). Accordingly, delay due to a crowed docket "weighs only slightly against the State, if at all." *Id.* at (¶9).

¶14. A "delay attributable to the defense is not counted against the State." *Muise v. State*, 997 So. 2d 248, 252 (¶13) (Miss. Ct. App. 2008). In addition, "[t]ime associated with an earnest attempt at plea negotiations will not be charged against the State." *Sharp v. State*, 786 So.2d 372, 378 (¶8) (Miss. 2001); *accord, e.g.*, *Taylor v. State*, 672 So. 2d 1246, 1259 (Miss. 1996). Thus, to the extent that the delay in bringing Reed to trial was the result of the case being set for pleas at Reed's request and then continued when those pleas did not occur,

7

the delay is not charged against the State.

¶15.    Based on the foregoing, the circuit court properly recognized that this factor favored Reed, but not heavily.

### C.    Defendant's Assertion of the Right to a Speedy Trial

¶16.    "Although it is the State's duty to insure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right." *Taylor*, 672 So. 2d at 1261. Therefore, "the defendant's assertion of his right to a speedy trial weighs in his favor." *Franklin v. State*, 136 So. 3d 1021, 1034 (¶50) (Miss. 2014). In contrast, "a defendant's failure to demand a speedy trial between his arrest and indictment is critical to the analysis of a speedy-trial claim." *Taylor*, 162 So. 3d at 785 (¶10) (internal quotation marks omitted). The Court weighs "the instant factor against defendants who, although they eventually asserted the right, allowed a significant amount of time to pass after arrest before demanding a speedy trial." *Id*.

¶17.    In the present case, Reed filed a demand for a speedy trial on March 6, 2013. Reed then filed a pro se motion to dismiss for failure to provide a speedy trial on December 27, 2013, and defense counsel filed a motion to dismiss for failure to provide a speedy trial on March 27, 2014. The trial judge stated in his ruling on the motion to dismiss that although Reed's December 27, 2013 pro se motion was sent to the circuit clerk's office and filed on the docket sheet, the court had no record of actually receiving the motion. The trial judge also noted that defense counsel failed to discuss Reed's December 27, 2013 motion during the June 2014 hearing on the matter.

8

¶18.   Nonetheless, the record is clear that Reed did file a demand for a speedy trial on March 6, 2013.  His subsequent actions, which are described above—setting his case for pleas that did not occur, requesting that the case be removed or stayed on the trial docket, etc.—are inconsistent with a desire for a speedy trial, and thus undermine to some extent the effectiveness and significance of his earlier demand.  *See Newell v. State*, 175 So. 3d 1260, 1271-72 (¶21) (Miss. 2015).  However, this factor does weigh in Reed's favor to some extent.

### D.   Prejudice to the Defendant

¶19.   "To determine whether the delay resulted in actual prejudice the Court considers three interests that the right to a speedy trial was meant to protect: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" *Taylor*, 162 So. 3d at 787 (¶16) (quoting *Jenkins v. State*, 947 So. 2d 270, 277 (¶21) (Miss. 2006)).  Reed bears the burden of showing actual prejudice, "since the defendant is clearly in the best position to show prejudice under [this] prong." *Johnson*, 68 So. 3d at 1245 (¶16).

¶20.   Reed argues that his lengthy pretrial incarceration was oppressive, stressful, and unpleasant in the way that any lengthy pretrial incarceration certainly is.  However, Reed presented no evidence of any more specific prejudice, nor has he made any argument that he was prejudiced in his ability to defend himself at trial.  In *Taylor*, the Supreme Court held that the defendant failed to show actual prejudice by "simply repeating the factors to be considered" with "nary a scintilla of evidence to support his claims." *Taylor*, 162 So. 3d at

9

787 (¶16). The *Taylor* Court explained that "generally, proof of prejudice entails the loss of evidence, the death of witnesses, or the staleness of an investigation." *Id*. at 786 (¶15) (citation omitted). Here, Reed failed to provide evidence to substantiate his claims of prejudice. This factor weighs against his speedy trial claim.

¶21. Thus, to summarize, the first *Barker* factor weighs in favor of Reed because a presumptively prejudicial period of more than twenty months elapsed between his arrest and trial. Second, the trial judge correctly concluded that the reasons for the delay are "to be weighed against the State, but not heavily." Third, Reed asserted his right by demanding a speedy trial, which weighs in his favor; however, some of Reed's subsequent actions were inconsistent with a desire for a speedy trial, so this factor also does not weigh heavily against the State. Fourth, Reed suffered no actual prejudice to his defense, which weighs in favor of the State. Our Supreme Court has held that "where, as here, the delay is neither intentional nor egregiously protracted, and where there is a complete absence of actual prejudice, the balance is struck in favor of rejecting the defendant's speedy trial claim." *Taylor*, 162 So. 3d at 787 (¶17) (quoting *Watts v. State*, 733 So. 2d 214, 236 (¶67) (Miss. 1999) (alterations, brackets omitted) (holding that an eighteen-month delay caused by crowded dockets did not warrant dismissal on speedy trial grounds); *see also, e.g.*, *Johnson*, 68 So. 3d at 1241-46 (¶¶5-22) (holding that a nineteen-month delay caused by crowded dockets did not warrant dismissal despite the defendant's assertion of his right to a speedy trial). Therefore, under binding Mississippi precedent, we conclude that the trial judge did not err by denying Reed's motion to dismiss the charges against him.

## II.     Prior Convictions

¶22.    In his pro se supplemental brief, Reed argues that the trial judge committed reversible error by prohibiting him from impeaching Lewis with evidence of Lewis's prior felony convictions.[3]  We agree and reverse and remand for a new trial.

¶23.    In *White v. State*, 785 So. 2d 1059 (Miss. 2001), our Supreme Court made clear that, under Mississippi Rule of Evidence 609(a)(1), a defendant is entitled to "full impeachment of prosecution witnesses" through proof of prior felony convictions.  *Id.* at 1062 (¶10).  This means that a prosecution witness's prior felony conviction is admissible "without the requirement of a balancing test except in extreme situations such as where the prosecution witness has a prior conviction that is both highly inflammatory and completely unrelated to the charges pending against the accused."  *Id.*  The Court also made clear that a prosecution witness's prior felony conviction is admissible under Rule 609(a)(1) regardless of whether the crime involved dishonesty or a false statement or "relates to the witness's veracity."  *Id.* at 1061 (¶6).  That is a requirement of Rule 609(a)(2) but not 609(a)(1).  The Court's decision in *White* was based on both Rule 609(a)(1) and the defendant's constitutional right to confront the witnesses against him.  *See id.* at 1060 (¶2).

¶24.    In this case, Reed was prohibited from impeaching Jimmy Lewis, the State's key witness, with Lewis's prior felony convictions for grand larceny and possession of cocaine. The trial judge precluded the impeachment because he found that Lewis's convictions were not "particularly probative of honesty" and that their "probative value" was "substantially

---

[3] The issue was thoroughly argued and preserved by trial counsel in the circuit court.

outweighed by the danger of unfair prejudice to the State." That ruling is contrary to the Supreme Court's decisions in *White* and *Young v. State*, 731 So. 2d 1145 (Miss. 1999). The error cannot be dismissed as harmless because Lewis's testimony and credibility were critical to the State's case.

¶25. Mississippi Rule of Evidence 609(a) provides:

> **(a) General Rule.** For the purpose of attacking the character for truthfulness of a witness,
>
>> (1) evidence that (A) a nonparty witness has been convicted of a crime shall be admitted subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and (B) a party has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the party; and
>>
>> (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.

M.R.E. 609(a). Citing *White*, the comment to the rule explains that

> Rule 609(a)(1) was amended in 2002 to incorporate the rationale of decisions by the Mississippi Supreme Court which recognized the difference in the highly prejudicial effect of showing the convictions when the witness is the accused and the little prejudicial effect from such impeachment of other witnesses. It was reasoned that when the impeachment by convictions is of a witness other than the accused in a criminal case there is little or no unfair prejudice which can be caused to a party. Thus, the probative value on the credibility of the witness will almost always outweigh any prejudice.

*Id.*, cmt.

¶26. In *White*, "Walter White was convicted of three counts of selling crystal methamphetamine." *White*, 785 So. 2d at 1060 (¶1). At trial, White sought permission to

12

cross-examine a confidential informant about a prior drug conviction unrelated to his service as an informant. *See id.* at (¶3). The trial court ruled that the conviction was "inadmissible because it did not bear on [the witness's] veracity." *Id.* On appeal, the Supreme Court reversed, holding that the trial court's ruling not only misinterpreted Rule 609(a) but also violated White's rights under the Confrontation Clause. *See id.* at 1063 (¶12).

¶27. The Court first addressed the question whether Rule 609(a)(1) applies only to convictions that involve dishonesty or false statements. The Court held that the "plain language" of Rule 609(a)(1) applies to *all* felony convictions punishable by death or imprisonment in excess of one year "whether or not the conviction relates to the witness's veracity." *White*, 785 So. 2d at 1061 (¶¶5-6). The Court specifically overruled "a long line of cases" that had held otherwise. Id.

¶28. The Court next addressed the question whether Rule 609(a)(1) requires a "probative value"/"prejudicial effect" "balancing test" when a criminal defendant seeks to impeach a witness for the State with a prior felony conviction. *See id.* at 1061-62 (¶¶7-10). The Court began by explaining that Rule 609(a)(1) evolved from "the common law edict that a person convicted of a felony was not competent to testify as a witness. Gradually, this absolute bar was eroded to the point that a felon's testimony was competent, but was also subject to impeachment by evidence of his . . . conviction." *Id.* at 1062 (¶7). The Court then stated that although Rule 609(a)(1) now "extends protection from the prejudicial effect of impeachment with prior felonies to any party," it cannot be interpreted "to extend equal protection to both sides in a criminal case." *Id.* at (¶8). As the Court explained, the Confrontation Clause

13

grants the accused broader rights of cross-examination than the State. See *id.* at (¶9). "Given

the constitutional right of a criminal defendant to confront those testifying against him," the

Court held that Rule 609(a)(1) "allow[s] full impeachment of prosecution witnesses *without*

*the requirement of a balancing test, except in extreme situations such as where the*

*prosecution witness has a prior conviction that is both highly inflammatory and completely*

*unrelated to the charges pending against the accused.*" *Id.* at (¶10) (emphasis added).[4] The

Court then held that the informant's drug conviction did not present such an "extreme" case;

therefore, the trial court committed reversible constitutional error by precluding White from

"impeach[ing] the State's key witness." *Id.* at 1062-63 (¶¶10-12).

¶29.    *White* built off of the Supreme Court's decision two years earlier in *Young*, 731 So.

2d at 1149-51 (¶¶29-41). In *Young*, the defendant in a murder trial (Young) was precluded

from impeaching the State's key witness (Ross) with a prior burglary conviction. *See id.* at

1149-50 (¶¶30, 33). The Court explained that the case was readily distinguishable from cases

involving "evidence of a *defendant's* prior conviction." *Id.* at 1150 (¶¶35-36). When the

State seeks to introduce a defendant's prior conviction, the court must carefully balance the

conviction's probative value against the danger of unfair prejudice in order "to prevent a

---

[4] *White* seems to follow the logic that "*all* felonies are at least somewhat probative of a witness's propensity to testify truthfully." *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005) (emphasis added); *see also Hopkins v. State*, 639 So. 2d 1247, 1254 (Miss. 1993) (Banks, J., concurring) ("[A]ny felony is per se probative on the issue of truthfulness."). A number of other courts have reasoned that the commission of any serious criminal offense demonstrates a disrespect for the law from which a jury may infer a willingness to give false testimony, even if the offense does not involve a false statement or overt dishonesty. *See, e.g.*, *State v. Malloy*, 639 P.2d 315, 317 (Ariz. 1981); *People v. Atkinson*, 713 N.E.2d 532, 540 (Ill. 1999); *State v. Hill*, 801 N.W.2d 646, 652 (Minn. 2011).

defendant from being convicted on the basis of a prior bad act rather than on the evidence presented at trial regarding the present crime." *Id.* at (¶35). In contrast, "Young sought to use evidence of Ross's prior burglary conviction for general impeachment purposes under [Rule] 609(a)(1)." *Id.* at (¶36). The Court rejected as "flawed" the State's argument that the prosecution would have been unfairly prejudiced by allowing Ross's impeachment. *See id.* at 1151 (¶40). Rather, "deny[ing] Young the right to fully explore this aspect of Ross's credibility den[ied] him the right to fully confront the witnesses against him." *Id.* The Court held that the trial court abused its discretion by precluding impeachment regarding the burglary conviction and reversed and remanded for a new trial. *Id.* at (¶41).

¶30. Finally, a year after *White*, the Supreme Court again made clear that "except in extreme situations," a trial court may not weigh the "probative value" of a prior conviction of a prosecution witness against any alleged "prejudicial effect" it may have on the State's case. *Jefferson v. State*, 818 So. 2d 1099, 1110 (¶¶26-27) (Miss. 2002). Except in an extreme case, "[n]o balancing test should [be] conducted," and it is "an abuse of discretion to do so." *Id.* In *Jefferson*, the Supreme Court found that "the trial judge . . . made the same mistake as the trial courts in *White* and *Young*"—i.e., based on a "balancing" analysis, he precluded the defendant, who was on trial for murder, from impeaching a prosecution witness with the witness's prior conviction for selling cocaine. *Id.* at (¶27).[5]

¶31. As described above, the present case turned primarily on the conflicting testimony and

---

[5] The error was deemed harmless because "on cross-examination, [the witness] volunteered that . . . he was a convicted felon" and there was "overwhelming proof of [the defendant's] guilt." *Id.* at (¶28).

credibility of three witnesses: Reed, Lewis, and James. James corroborated Lewis's claim that Reed shot him, but her version of events also conflicted with Lewis's in some respects.

¶32.    At trial, Reed sought to impeach Lewis with two prior felony convictions: a 2008 conviction for grand larceny and a 2011 conviction for possession of cocaine.[6] Lewis admitted that at the time he was shot, he was still on probation imposed as a result of the 2011 conviction. Reed's attorney argued that Lewis's prior convictions were admissible under Rule 609(a) and the Confrontation Clause. He also argued that the convictions established a strong motive for Lewis to lie: if Lewis had admitted that he was carrying the gun, his probation could have been revoked, and he could have been charged as a felon in possession of a firearm and sentenced as a habitual offender. As noted above, the trial judge precluded Reed from cross-examining Lewis regarding the convictions because he found they were not "particularly probative of honesty" and that their "probative value" was "substantially outweighed by the danger of unfair prejudice to the State."

¶33.    The trial judge's ruling excluding evidence of Lewis's prior convictions for grand larceny and cocaine possession cannot be distinguished from the erroneous rulings of the trial judges in *White*, *Young*, and *Jefferson*. In *White*, a drug case, the Supreme Court held that the defendant was entitled to impeach the State's key witness with the witness's unrelated prior drug conviction. *White*, 785 So. 2d at 1063 (¶12). In *Young*, a murder trial, the Court held that the defendant was entitled to impeach the State's key witness with a prior burglary

---

[6] Reed's proffer also included evidence that Lewis was convicted twice of domestic violence and once of simple assault on a police officer. However, the abstracts proffered seems to indicate that these three offenses were treated as misdemeanors, which means they would not be admissible under Rule 609(a).

conviction. *Young*, 731 So. 2d at 1151 (¶41). And in *Jefferson*, a murder trial, the Court held that the defendant was entitled to impeach a key prosecution witness with a prior conviction for selling cocaine. *Jefferson*, 818 So. 2d at 1112 (¶36). None of those convictions involved false statements, had any *special* probative value as it related to the witness's honesty, or had any significant relationship to the charges against the accused. However, the Supreme Court made clear that none of that mattered because a criminal defendant has a right, under the Constitution and Rule 609(a)(1), to "full impeachment of prosecution witnesses without the requirement of a balancing test, except in extreme situations such as where the prosecution witness has a prior conviction that is *both* highly inflammatory *and* completely unrelated to the charges pending against the accused." *White*, 785 So. 2d at 1062 (¶10) (emphasis added). This case did not involve an "extreme situation." Cocaine possession and grand larceny are felonies, but there is nothing "highly inflammatory" about Lewis's convictions. On this issue, this case is indistinguishable from *White*, *Young*, and *Jefferson*. It follows that the trial court abused its discretion by excluding the evidence based on a "balancing test."

¶34. Moreover, in this case, Lewis's prior convictions were more than just generally relevant to his credibility. As Reed's trial counsel argued, they also established a substantial potential motive for Lewis to lie in this case. As a convicted felon, if Lewis had admitted to police that he shot himself after he borrowed and knowingly possessed Reed's gun, *he* could have been charged as a felon in possession of a firearm. Based on his two prior felony convictions and sentences, he also could have been sentenced as a habitual offender. Finally, at the time he was shot, Lewis was still on probation as part of his sentence for possession

17

of cocaine. His probation could have been revoked for possessing a gun. Thus, in addition to being generally relevant to his credibility, Lewis's prior felony convictions were evidence of a strong motive for him to deny Reed's version of events. Indeed, the United States Supreme Court has held that the Confrontation Clause protects the accused's right to cross-examine a prosecution witness on this precise issue. *Davis v. Alaska*, 415 U.S. 308, 309-18 (1974) (holding that the defendant was entitled to cross-examine a key prosecution witness about his probationary status in order to explore his possible motives for identifying the defendant, such as to shift suspicion away from himself).

¶35.    Thus, the trial judge erred by precluding Reed from impeaching Lewis with Lewis's prior felony convictions. The only remaining issue is whether the error requires reversal or was harmless. Here, it is important to remember that the error involves not only a misapplication of the rules of evidence but also a violation of the Confrontation Clause. "The basic, harmless-error test in such instances is 'whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Goforth v. State*, 70 So. 3d 174, 187 (¶57) (Miss. 2011) (quoting *Brown v. State*, 995 So. 2d 698, 704 (¶25) (Miss. 2008)) (internal quotation marks omitted).

¶36.    In the final sentence of the argument section of its brief, "the State submits," without any elaboration, that any "error was harmless in light of the overwhelming proof of Reed's guilt." We cannot agree that the evidence presented at trial was overwhelming. The trial turned on whether the jury believed Lewis and his girlfriend, whose own stories differed in significant respects, or Reed. Given the inconsistencies between Lewis's and James's

18

testimonies and James's relationship with Lewis, it is likely that the jurors' decision simply turned on who they found more credible, Lewis or Reed. The exclusion of Lewis's prior felony convictions was especially prejudicial to Reed because the Court expressly instructed the jury that Reed *was* a convicted felon.[7] Thus, the jury was told that Reed was a convicted felon, but Reed was prohibited from showing that the same was true of Lewis or that Lewis had a significant motive to lie. Under these circumstances, it is impossible for us to say "beyond a reasonable doubt" that the exclusion of evidence bearing on Lewis's credibility "did not contribute to the verdict obtained." *Id.*

**CONCLUSION**

¶37. Although we affirm the trial judge's ruling that Reed's constitutional right to a speedy trial was not violated, we reverse and remand for a new trial. As in *White* and *Young*, the error in prohibiting Reed from cross-examining Lewis regarding his prior convictions cannot be deemed harmless. Therefore, Reed's conviction must be reversed and the case remanded for a new trial.

¶38. **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY, FIRST JUDICIAL DISTRICT, IS REVERSED, AND THIS CASE IS REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

---

[7] The indictment alleged that Reed was convicted of selling cocaine in 2002. In a motion to amend the indictment, the State alleged that he had pled guilty to charges of house burglary and grand larceny on an unspecified date. Reed stipulated that he was a prior convicted felon for purposes of the felon-in-possession charge, and the court instructed the jury that Reed had "been convicted of a felony prior to November 3, 2012."

19