# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00422-COA

**JAIRUS COLLINS A/K/A JAIRUS J. COLLINS**                    **APPELLANT**
**A/K/A JAIRUS JIDON COLLINS A/K/A JARIUS**
**COLLINS A/K/A JARIUS J. COLLINS**

**v.**

**STATE OF MISSISSIPPI**                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/25/2016 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL ADELMAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KATY TAYLOR GERBER |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF POSSESSION OF A WEAPON BY A CONVICTED FELON AND SENTENCED AS A HABITUAL OFFENDER TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR ANY FORM OF EARLY RELEASE |
| DISPOSITION: | AFFIRMED - 05/23/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE, WILSON AND GREENLEE, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.    A jury in the Forrest County Circuit Court convicted Jairus Collins of possession of

a weapon by a convicted felon, and the court sentenced him, as a habitual offender, to life

in the custody of the Mississippi Department of Corrections (MDOC) without the possibility

of parole. Jairus[1] subsequently filed a motion for a judgement notwithstanding the verdict (JNOV) or a new trial, which the trial court denied, and a timely notice of appeal. On appeal, Jairus argues that (1) the charge should have been dismissed with prejudice because his statutory and constitutional rights to a speedy trial were violated, (2) the verdict was against the overwhelming weight of the evidence, and (3) his sentence as a habitual offender violates the Mississippi Constitution. We find no error and affirm Jairus's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2. On November 14, 2012, the grand jury indicted Jairus for murder (Count I) and possession of a weapon by a convicted felon (Count II). The indictment alleged that between December 7 and 9, 2011, Jairus (I) murdered Ebony Jenkins with deliberate design and (II) possessed a .40 caliber handgun. Jairus was indicted as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2015).

¶3. On November 19, 2012, Jairus pled not guilty and filed a motion requesting that Count I and Count II be severed and tried separately. The State did not object to severing the charges for trial, and on December 17, 2012, the circuit court entered an order granting Jairus's motion to sever.

¶4. Collins was convicted of murder following a jury trial in March 2013, and his motion for JNOV or a new trial was denied on April 15, 2013. However, the Mississippi Supreme Court reversed Jairus's murder conviction on the grounds that the trial court erred by failing to suppress Jairus's statement to police after he invoked his right to counsel, and by allowing

---

[1] The defendant's father and brother testified at trial, so we refer to him as Jairus to avoid confusion.

a police officer to testify as a lay witness regarding the locations of Jairus's and Jenkins's cell phones. *Collins v. State*, 172 So. 3d 724, 744 (¶30) (Miss. 2015). The Supreme Court reversed and remanded the case for further proceedings consistent with its opinion. *Id*. The Supreme Court's mandate issued on September 10, 2015.

¶5. On September 16, 2015, the State filed a motion in the circuit court to set the case for trial as to Count II of the indictment only. The circuit court set Count II for trial on February 23, 2016.

¶6. On October 15, 2015, Jairus moved to dismiss Count II on the ground that trying him more than three years after he was indicted and pled not guilty would violate his right to a speedy trial under Mississippi Code Annotated section 99-17-1 (Rev. 2015) and the Constitution. The court held a hearing on Jairus's motion on November 9, 2015. At the hearing, defense counsel acknowledged that Jairus requested that the charges against him be severed and tried separately, which resulted in some delay, and that Jairus never asserted his right to a speedy trial at any point prior to his motion to dismiss. Counsel further conceded that the State was not responsible for any delay through the sentencing and post-conviction motions in Jairus's murder trial. At the conclusion of the hearing, the circuit court noted that Jairus was not entitled to dismissal based on the length of the delay alone, and the court denied the motion to dismiss Count II. The case then proceeded to trial on February 23-24, 2016.

¶7. Jessie Miles testified at trial that he purchased a .40 caliber Hi-Point handgun from a pawn shop in Columbia, Mississippi. Records from the pawn shop were introduced

showing that in February 2010 Miles purchased a Hi-Point handgun with the serial number X77860. Miles later had "a problem with [the] gun jamming." Sometimes it would fire, but sometimes it would jam. Miles told Jairus's brother, Joshia Collins, about his problem with the gun. Joshia told Miles that Jairus could fix it, so Miles spoke to Jairus. Jairus confirmed that he could fix the gun, so in November 2011, Miles "gave [Jairus] the gun so he could fix it." Jairus never returned the gun.

¶8.     Miles identified a gun introduced into evidence at trial as the gun he gave to Jairus in November 2011. However, he testified that it had been altered in two respects: black tape had been wrapped around the handle, and the serial number had been scratched off. Jeff Byrd, a crime scene investigator with the Hattiesburg Police Department, testified that he was able to reveal the gun's serial number by applying a solvent and sandpaper to it. The serial number matched the number on the gun sold to Miles (X77860).

¶9.     Jairus's and Joshia's father, Melven Collins, testified that between December 7 and 9, 2011, Jairus and Joshia arrived at his home in Hattiesburg. Melven testified that he noticed a "bag" in his sons' vehicle that "alarmed" him. Melven picked up the bag and put it back down, and "it had weight to it." Melven did not open the bag, but an "alarm went off" in his mind, and he told his sons that "whatever it is, you need to get it away from this house." Melven previously testified that he thought that the object in the bag was a gun, but when confronted with his prior testimony, he denied that he ever formed such an opinion.

¶10.     Joshia admitted that he knew Miles, but he insisted that he never talked to Miles about Jairus repairing a gun and that he had never seen Miles's gun. Joshia admitted that Melven

4

told him and Jairus to "get out of his yard" because Melven was "uncomfortable" about something, but Joshia claimed that he did not know why Melven asked them to leave. Joshia further testified that he and Jairus left his father's house, that he drove Jairus up Interstate 59 (I-59), that he stopped on the side of the highway, and that Jairus got out of the vehicle. However, Joshia testified at trial that he never saw a gun or a bag and that he had no idea why Jairus got out of the vehicle. Joshia previously gave a sworn statement that he knew that Jairus had a gun in the bag, that he drove Jairus to mile marker 118 on I-59 to dispose of the gun, and that Jairus then exited the vehicle and disposed of the gun. However, when confronted with his prior statement, Joshia denied that he could recall a specific mile marker or that he ever saw the gun or bag. Joshia did admit that he led law enforcement to the area along I-59 where they found the gun.

¶11. Lieutenant Brandon McLemore of the Hattiesburg Police Department testified that in December 2011, he and one or more other officers drove with Joshia north on I-59 to the Vossburg exit, where Jairus told them that they could find the gun in the wood line nearby. McLemore testified that they told Joshia that they were looking for a gun and that Joshia directed them to the location of the gun. In the wood line, the officers found a plastic bag with a gun inside. The gun had black electrical tape around the handle, and no fingerprints were recovered. McLemore testified that the tape was likely placed on the gun to prevent the collection of fingerprints.

¶12. Lori Beall, a forensic scientist with the Mississippi Crime Laboratory, testified as a firearms expert. Beall testified that she test-fired the gun four times, that it did not jam, and

5

that it was operational.

¶13.     The jury found Jairus guilty of possession of a weapon by a convicted felon.  At sentencing, the State presented proof that Jairus had been convicted previously of armed robbery twice, burglary of a dwelling, and lewd and lascivious battery (in Florida).  The circuit court found that Jairus's prior convictions satisfied the requirements of section 99-19-83 and imposed a mandatory sentence of life without eligibility for parole.  Jairus filed a motion for JNOV or a new trial, which was denied, and a timely notice of appeal.

¶14.     Though not relevant to the issues raised in this appeal, we note that in May 2016, Jairus was retried, convicted, and sentenced to life without parole on Count I of the indictment.  His appeal from that conviction and sentence has been assigned to this Court and docketed as *Collins v. State*, 2016-KA-01002-COA.

## DISCUSSION

¶15.     On appeal, Jairus argues that (1) his statutory and constitutional rights to a speedy trial were violated; (2) the jury's verdict is against the overwhelming weight of the evidence; and (3) his sentence of life without parole is unconstitutional.

### I.     Speedy Trial

#### A.     Statutory Right

¶16.     Jairus first alleges a violation of his statutory right to a speedy trial.  Section 99-17-1 provides that "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned."  However, this Court has

repeatedly "held that if a defendant fails to raise the statutory right to a speedy trial within 270 days of his arraignment, he acquiesces to the delay." *Whitaker v. State*, 114 So. 3d 725, 730 (¶18) (Miss. Ct. App. 2012) (quoting *Roach v. State*, 938 So. 2d 863, 867 (¶9) (Miss. Ct. App. 2006)); *accord, e.g.*, *Mims v. State*, 856 So. 2d 518, 522 (¶11) (Miss. Ct. App. 2003); *Malone v. State*, 829 So. 2d 1253, 1257 (¶11) (Miss. Ct. App. 2002) (citing *Walton v. State*, 678 So. 2d 645, 649-50 (Miss. 1996)). The Supreme Court has also held that "a defendant may effectively waive his right to complain of not being tried within the 270-day period set out in [section] 99-17-1, when the defendant does not request or assert his right to a speedy trial or object to a delay, especially when the defendant fails to show any prejudice in the failure to be tried within the statutory 270-day period." *Guice v. State*, 952 So. 2d 129, 142 (¶28) (Miss. 2007) (citing *Walton*, 678 So. 2d at 650).

¶17. Jairus was arraigned in November 2012 and was not tried until February 2016, which obviously was much more than 270 days later. However, Jairus failed to assert his statutory right to a speedy trial until October 2015, approximately three years after his arraignment, and his trial commenced only four months after he raised the issue. Under the precedent of this Court and the Supreme Court, Jairus's delay in raising the issue waived his statutory right to be tried within 270 days of arraignment.[2]

### B. Constitutional Right

¶18. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public

---

[2] Jairus's reply brief on this issue concludes: "As Appellant argued in his opening [b]rief, Justice Dickinson got it right with his dissent in *McBride v. State*, 61 So. 3d 138 (Miss. 2011)." This is an argument better directed to the Supreme Court.

trial . . . ." U.S. Const. amend. VI; *accord* Miss. Const. art. 3, § 26. "In determining whether a defendant's [constitutional] right to a speedy trial has been violated, courts must analyze four factors: 1) the length of delay, 2) the reason for the delay, 3) the defendant's assertion of his right to speedy trial, and 4) prejudice to the defendant." *Hurst v. State*, 195 So. 3d 736, 741 (¶11) (Miss. 2016) (citing *Barker v. Wingo*, 407 U.S. 514, 515 (1972)). "[E]ach case should be considered on an 'ad hoc basis' and . . . no one factor is outcome determinative." *Rowsey v. State*, 188 So. 3d 486, 493 (¶17) (Miss. 2015) (quoting *Barker*, 407 U.S. at 530). The United States "Supreme Court has held that courts must 'engage in a difficult and sensitive balancing process' of the four factors because none of the factors is 'either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.'" *Reed v. State*, 191 So. 3d 134, 139 (¶8) (Miss. Ct. App. 2016) (quoting *Barker*, 407 U.S. at 533).

### 1. Length of Delay

¶19.　"The constitutional right to a speedy trial attaches 'at the time of a formal indictment or information or else the actual restraints imposed by arrest and holding to a criminal charge.'" *Rowsey*, 188 So. 3d at 495 (¶24). The Mississippi Supreme Court has previously held that a delay of eight months or more is presumptively prejudicial. *Id.* Because the delay in this case was more than eight months, this factor weights against the State.

### 2. Reasons for the Delay

¶20.　"Once the delay is deemed presumptively prejudicial, the burden shifts to the State

to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons." *Reed*, 191 So. 3d at 139 (¶11). This Court must then determine whether the delay is attributable to the State or the defendant. *McCormick v. State*, 183 So. 3d 898, 903 (¶18) (Miss. Ct. App. 2015). "Deliberate attempts to delay the trial in order to hamper the defense are weighed heavily against the State. On the other hand, 'a more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant'" *Hardy v. State*, 137 So. 3d 289, 299 (¶30) (Miss. 2014) (quoting *Ben v. State*, 95 So. 3d 1236, 1242-43 (¶11) (Miss. 2012)).

¶21.    Jairus concedes that the delay between his arrest and his first trial and sentencing on Count I of the indictment (murder) are not attributable to the State. However, Jairus insists that the nearly three-year delay between his initial sentencing on Count I and his trial on Count II is attributable to the State. Jarius alleges that the State "simply assumed" that his murder conviction would be affirmed—and that all delay based on this assumption should be weighed against the State.

¶22.    The State argues that the delay was caused by Jairus's motion to sever the charges against him for a separate trial. Citing *Baine v. State*, 604 So. 2d 258, 264 (Miss. 1992), the State argues that delays due to a defendant's motion to sever are not chargeable to the State. In the trial court, the State also argued that considerations of "judicial economy" weighed against burdening the court system with a trial for a defendant who had already been sentenced to life without parole on a separate charge. However, Jairus's motion to sever did

not preclude the State from trying him on Count II throughout the pendency of his appeal on Count I. And, in general, the constitutional speedy trial clock is not tolled simply because the defendant is already serving a sentence on a separate charge. *See Smith v. Hooey*, 393 U.S. 374, 378-79 (1969). Ultimately, "[i]t is the burden of the State to see that a defendant receives a speedy trial" and "to show good cause for [any] delay." *Vickery v. State*, 535 So. 2d 1371, 1377 (Miss. 1988).

¶23. As we explain below, under applicable precedent, Jairus's speedy trial claim fails even if we charge the State with responsibility for the delay between Jairus's initial sentencing on Count I and his trial on Count II. Therefore, for purposes of this appeal, we will assume that this period of delay should be weighed against the State.

### 3. Assertion of the Right to a Speedy Trial

¶24. "[T]he failure to assert the right to a speedy trial 'will make it difficult for a defendant to prove he was denied a speedy trial.'" *Fisher v. State*, 532 So. 2d 992, 996 (Miss. 1988) (quoting *Barker*, 407 U.S. at 531-32). Furthermore, "a motion to dismiss does not equate to an assertion of the right to a speedy trial." *Moffett v. State*, 49 So. 3d 1073, 1087 (¶39) (Miss. 2010).

¶25. As discussed above, Jairus first mentioned his right to a speedy trial almost three years after his arraignment, at which point his trial was already scheduled to be held in only four months. Even then, he sought only dismissal of the indictment, not a speedy trial. Accordingly, this factor weighs against Jairus.

### 4. Prejudice

¶26. "To determine whether the delay resulted in actual prejudice the Court considers three interests that the right to a speedy trial was meant to protect: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" *Taylor v. State*, 162 So. 3d 780, 787 (¶16) (Miss. 2015) (quoting *Jenkins v. State*, 947 So. 2d 270, 277 (¶21) (Miss. 2006)). "Of these three interests, the last is the most important; and when violated, the most prejudicial to the defendant." *Hersick v. State*, 904 So. 2d 116, 123 (¶18) (Miss. 2004). "Generally, proof of prejudice entails the loss of evidence, death of witnesses, or staleness of an investigation." *McCormick*, 183 So. 3d at 903 (¶21) (quoting *Sharp v. State*, 786 So. 2d 372, 381 (¶19) (Miss. 2001)). Jairus bears the burden of showing actual prejudice, "since the defendant is clearly in the best position to show prejudice under [this] prong." *See Johnson v. State*, 68 So. 3d 1239, 1245 (¶16) (Miss. 2011).

¶27. On appeal, Jairus fails to articulate any prejudice. He simply states that the lengthy delay was "obviously prejudicial." He fails to identify any way in which his defense was prejudiced or any oppression or hardship caused by the delay in trial on Count II. The Supreme Court has held that a defendant fails to establish actual prejudice by "simply repeating the factors to be considered" with "nary a scintilla of evidence to support his claims." *Taylor*, 162 So. 3d at 787 (¶16). Jairus likewise has failed to establish any prejudice whatsoever.

¶28. To summarize, the length of the delay weighs against the State. We will also assume that the reason for the delay weighs against the State, as the State was not precluded from

11

bringing Jairus to trial during the pendency of his appeal on Count I. However, Jairus never demanded a speedy trial. Indeed, he did not mention the right for almost three years, and when he finally did raise the issue, his trial was only four months away. Most important, Jairus fails to articulate any prejudice whatsoever. Balancing these factors, we agree with the trial judge that there was no violation of Jairus's constitutional right to a speedy trial. *See Taylor*, 162 So. 3d at 787 (¶17) (holding that, notwithstanding a lengthy and presumptively prejudicial delay, there is no speedy trial violation where there is no evidence of actual prejudice and "the other factors are neutral or only slightly in [the defendant's] favor, at best"); *accord Reed*, 191 So. 3d at 141 (¶21).

## II. Weight of the Evidence

¶29. Jairus argues that the trial judge erred by denying his motion for a new trial because the verdict was against the overwhelming weight of the evidence. He emphasizes that there were no fingerprints on the gun and that Miles was the only witness who "place[d] a weapon in [his] possession." Jairus argues that Miles was not credible because he testified that his gun jammed, while Beall testified that "[t]o [her] knowledge [the gun] had not been altered or repaired at all."

¶30. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005). "[T]he evidence should be weighed in the light most favorable to the verdict," and we will not

reverse unless "[t]he trial court . . . abuse[d] its discretion in denying a new trial." *Id.* at 844-45 (¶¶18-19).

¶31.    The trial judge did not abuse his discretion by denying Jairus's motion. Miles testified that he gave Jairus the gun at issue, and there was ample evidence that it was the same gun later retrieved by law enforcement. Jairus suggests that Beall's testimony undermines Miles's credibility, but Miles testified that even before he gave the gun to Jairus, it was not totally inoperable and would fire sometimes. Moreover, Jairus was supposed to fix the gun and claimed that he could, and Beall testified only that, "to [her] knowledge," the gun had not been repaired. In addition, even after all of Melven's and Joshia's crawfishing from their prior testimony and statements, their testimony at the present trial, when considered with the testimony of other witnesses, still supported a reasonable inference that Jairus disposed of the gun alongside I-59, where it was retrieved by law enforcement.

¶32.    "When a criminal case is tried to a jury, the members of the jury act as the finders of fact." *Brown v. State*, 764 So. 2d 463, 467 (¶9) (Miss. Ct. App. 2000). "They are charged to listen to the evidence, observe the demeanor of the witnesses, and decide the issue of the credibility of the witnesses and what weight to give to any particular piece of evidence." *Id.* The jury in this case obviously found the State's witnesses sufficiently credible as to material issues to prove Jairus's guilt beyond a reasonable doubt. Having reviewed the record on appeal, we cannot say that the jury's verdict is against the overwhelming weight of the evidence or that the trial judge abused his discretion by denying Jairus's motion for a new trial.

## III. Habitual Offender Sentence

¶33. Jairus argues that his enhanced sentence as a habitual offender under section 99-19-83 is contrary to the United States Supreme Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). However, "the rule" expressed and applied in those cases is as follows: "*Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.*" *Blakely*, 542 U.S. at 301 (quoting *Apprendi*, 530 U.S. at 490) (emphasis added). Thus, *Apprendi* and *Blakely* do not require the State to prove prior convictions to a jury. It is constitutionally permissible for a judge to impose an enhanced sentence based on the judge's own finding that the defendant's prior convictions satisfy the requirements of section 99-19-83. *See Smith v. State*, 963 So. 2d 1168, 1169-70 (¶5) (Miss. Ct. App. 2007).

¶34. Jairus also asserts that the use of his prior convictions to impose an enhanced sentence violated Mississippi Rule of Evidence 404(b). This arguments fails for at least three reasons. First, the Rules of Evidence do not apply in sentencing hearings. M.R.E. 1101(b)(4); *Randall v. State*, 806 So. 2d 185, 231-32 (¶131) (Miss. 2001). Second, Rule 404(b) provides only that "[e]vidence of a crime . . . is not admissible to prove a person's character *in order to show that on a particular occasion the person acted in accordance with the character*." M.R.E. 404(b)(1) (emphasis added). "The evidence may be used for another purpose . . . ." M.R.E. 404(b)(2). Jairus's prior convictions were not admitted to show that he acted in conformity with his character on a particular occasion. Indeed, they were not admitted until after his jury

14

trial on the instant charge had concluded. His prior convictions were admitted only as a basis for enhancing his sentence, which is "another purpose" not prohibited by Rule 404(b). Third, a rule of evidence cannot override a sentence mandated by the Legislature. As our Supreme Court put it, "It is the [L]egislature's prerogative, and not this Court's, to set the length of sentences." *Stromas v. State*, 618 So. 2d 116, 123 (Miss. 1993). Accordingly, Jairus's final argument is without merit.

## CONCLUSION

¶35. Jairus waived his statutory speedy trial right by failing to timely assert it; under applicable precedent, there was no violation of his constitutional speedy trial right; his conviction is not against the overwhelming weight of the evidence; and his sentence is valid and constitutional. Therefore, we affirm his conviction and sentence.

¶36. **THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF POSSESSION OF A WEAPON BY A CONVICTED FELON AND SENTENCE AS A HABITUAL OFFENDER OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR ANY FORM OF EARLY RELEASE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.**