COLEMAN, Justice, for the Court:
¶ 1. The Circuit Court of Hinds County convicted Michael Taylor of aggravated assault and sentenced him to five years. On appeal, Taylor’s counsel filed a Lindsey brief, stating that she had identified no appealable issues.[1] After an independent review of the record and the briefs, we conclude that there are no reversible issues.
Facts and Procedural History
¶ 2. On January 6, 2007, Michelle Finney arrived at a child’s birthday party and parked her car on the street, blocking Michael Taylor’s car in a driveway. An argument and fistfight ensued. After bystanders broke up the fight, Taylor shot Finney in the arm and fled. Two days later, Taylor was at friend’s house when law enforcement officers arrived to execute unrelated arrest warrants. Taylor was detained after he tried to flee out a window in the back of the house. The officers brought everyone present to the living room and searched for weapons. An investigator noticed a black coat on the couch, which Taylor claimed. Upon discovering a handgun and narcotics in the jacket, the officers arrested Taylor for possessing the narcotics and for being a felon in possession of a fíréarm. Later that day, police obtained an arrest warrant for Taylor’s alleged aggravated assault on Finney:
¶ 3. In May 2007, a Hinds County grand jury indicted Taylor for the aggravated assault on Finney and for being a felon in possession of a firearm on the day of the assault. Eighteen months passed from the time Taylor was indicted until his trial. He raised a speedy trial claim in the circuit court, but it was denied by the trial judge. Taylor’s trial was held in December 2008. The jury returned a guilty verdict on the aggravated-assault charge; the *783 felon-in-possession charge was retired to the files. Taylor was sentenced to five years in the custody of the Mississippi Department of Corrections with three years suspended. On appeal, Taylor’s counsel filed a brief stating that she had identified no appealable issues. The Court reviewed the record and requested supplemental briefing, which the parties submitted.
Discussion
¶4. The instant appeal is governed by Lindsey v. State, 939 So.2d 743 (Miss.2005), in which the Court established the procedure to be followed when “appellate counsel represents an indigent criminal defendant and does not believe his or her client’s case presents any arguable issues on appeal.” Lindsey, 939 So.2d at 748 (¶ 18).
First, appellate counsel “must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(i)-(4), (7)[.]” [Lindsey, 939 So.2d at 748 (¶ 18) ]. Second, counsel must certify in his or her brief that:
there are no arguable issues supporting the client’s appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client’s right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.
Id. Third, counsel must send a copy of his brief to the defendant, inform the defendant that counsel could not find any appealable issues, and advise the client of the right to file a pro se brief. Id. Fourth, the appellate court will determine, based on its review of the record and any pro se brief filed, if there is any arguable issue. Id. If so, the court will require appellate counsel to submit supplemental briefing on that issue, “regardless of the probability of the defendant’s success on appeal.” Id. Last, “[o]nce briefing is complete, the appellate court must consider the case on the merits and render a decision.” Id.
Easley v. State, 46 So.3d 345, 347 (¶ 11) (Miss.2010). See also Lyons v. State, 125 So.3d 653, 656-57 (¶¶ 12-13) (Miss.2013).
¶ 5. Taylor’s counsel complied with the requirements set forth in Lindsey and filed a brief stating that she had scoured the record and had identified no appeal-able issues. The State agreed that the case was devoid of arguable issues and asked that Taylor’s conviction and sentence be affirmed. Taylor did not file a pro se brief. Pursuant to Lindsey, the Court reviewed the record and requested supplemental briefing on two issues — one issue being whether Taylor’s right to a speedy trial was violated. After reviewing the briefs and the record, we conclude that there are no issues that warrant reversal. Because the dissent disagrees on the speedy-trial issue and addresses that issue in depth, we provide our analysis as well.
¶ 6. Speedy-trial claims are analyzed under the Barker test, which requires a balancing of four factors: (1) length of delay; (2) reasons for the delay; (3) defendant’s assertion of his right to a speedy trial; and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Barker Court explained that each case must be considered “on an ad hoc basis” and that it sought only to “identify some of the factors which courts should assess in determining whether a particular defen *784 dant has been deprived of his right” to a speedy trial. Id. The Court wrote:
We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.
Id. at 533, 92 S.Ct. 2182. See also Bateman v. State, 125 So.3d 616, 633 (¶ 59) (Miss.2013) (the Barker factors must be balanced “along with other relevant circumstances”).
1. Length of Delay
¶ 7. Both parties recognize that fifteen months elapsed from the date Taylor was indicted in August 2007 until his trial in December 2008. However, Taylor was in custody for several months prior to being indicted, creating a total delay of eighteen months or 550 days. The Court has held that a “delay of eight months or longer is presumptively prejudicial.” Johnson v. State, 68 So.3d 1239, 1242 (¶ 7) (Miss.2011) (citing Smith v. State, 550 So.2d 406, 408 (Miss.1989)). The Johnson Court wrote: “[L]et us be clear[:] when the delay-is presumptively prejudicial that does not mean that actual prejudice to the defendant exists. Rather, actual prejudice is determined at a different point in the Barker analysis.” Johnson, 68 So.3d at 1242 (¶ 7). Thus, a delay exceeding .eight months serves to trigger an analysis of the remaining Barker factors. Id.
2. Reasons for the Delay
¶ 8. The only reason for the delay cited by the State and evident from the record is the congested docket. The Court has held repeatedly that “[djelays caused by overcrowded dockets are not to be weighed heavily against the State.” State v. Magnusen, 646 So.2d 1275, 1282 (Miss.1994) (citing Adams v. State, 583 So.2d 165, 169 (Miss.1991)); Kinzey v. State, 498 So.2d 814, 817 (Miss.1986) (did not weigh in favor of defendant because overcrowded dockets were “good cause for continuance”); Bailey v. State, 463 So.2d 1059, 1062-63 (Miss.1985).[2] Speedy-trial claims are raised frequently in Hinds County prosecutions, and the crowded docket is almost always at least part of the reason for the delay. In Travis v. State, 13 So.3d 320 (Miss.Ct.App.2008), nearly three years passed from arrest to trial, and the delay was due, in part, to the crowded docket. Travis, 13 So.3d at 326-27 (¶¶18, 22). The Court of Appeals held that Travis did not suffer prejudice and that his right to a speedy trial was not violated. Id. at 330 *785 (¶ 32). Then-Chief Judge King recognized, “While lamentable, it is nonetheless true that courts in the more populated areas of our state maintain a criminal docket which is so large that delay in bringing defendants to trial is a rueful byproduct.” Id. at 329 (¶ 28).
¶ 9. In Jenkins v. State, 947 So.2d 270 (Miss.2006), the majority of the delay was “attributed to either the state crime lab or the private company subsequently hired to complete the DNA testing requested by the State.” Jenkins, 947 So.2d at 277 (¶ 17). Recognizing that the delays were unintentional and caused primarily by the crime lab, which was “an instrumentality of the State,” the Court held that the reason-for-delay factor did not favor either party. Id. at 277 (¶¶ 17-18). See also Manix v. State, 895 So.2d 167, 176 (¶¶ 18-20) (Miss.2005) (factor weighed only slightly against the State where delays resulted from crime lab backlog and replacement of the prosecutor); Gray v. State, 728 So.2d 36, 48 (¶ 34) (Miss.1998) (delay due to wait for DNA evidence from FBI crime lab “weighted] very slightly, if at all, in favor of the defendant”) (citing Hull v. State, 687 So.2d 708, 730 (Miss.1996)); Magnusen, 646 So.2d at 1281 (reasons for delay included: congested trial docket, unavailability of evidence, heavy case load, delays caused by the crime laboratory, several delays attributed to the defendant, and unavailability of the judge; Court held that the reason-for-delay factor favored the State slightly, or “[a]t the very least, it weighted] equally against the State and the defendant”). Because the crowded docket was the only reason for the delay in the instant case, the factor weighs only slightly against the State, if at all.
3. Defendant’s Assertion of the Right
¶ 10. Taylor made a speedy-trial demand in August 2008, approximately fifteen months after his arrest and one year after he was indicted; his trial was held three-and-a-half months after he made the demand. “Although it is the State’s duty to ensure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right.” Bateman, 125 So.3d at 630 (¶ 49) (quoting Taylor v. State, 672 So.2d 1246, 1261 (Miss.1996)). “This Court has held that a defendant’s failure to demand a speedy trial between his arrest and indictment is ‘critical’ to the analysis of a speedy-trial claim.” Bateman, 125 So.3d at 630 (¶ 49) (citing State v. Woodall, 801 So.2d 678, 684 (Miss.2001)). And the Court has weighed the instant factor against defendants who, although they eventually asserted the right, allowed a “significant amount of time” to pass after arrest before demanding a speedy trial. Bateman, 125 So.3d at 630 (¶ 48).
¶ 11. In Bateman, the defendant asserted his right to a speedy trial two days after he was arraigned, but he had been in custody for 310 days at that time. Id. at 631 (¶ 50). The Court noted that the trial court acted promptly after Bateman’s demand on February 8, setting his trial date for April 26 — only two-and-a-half months later. Id. Because Bateman did not assert his right to a speedy trial between his arrest and his indictment, the Court held that he had failed to assert it “in a timely manner and offered no evidence of his inability to do so[,]” and the Court weighed the instant factor against Bateman. Id. Likewise, the Court of Appeals weighed the assertion-of-the-right factor against a defendant where he renewed his demand for a speedy trial on April 6, and trial “was promptly scheduled and held” the following month on May 24. McGee v. State, 928 So.2d 250, 255 (¶ 19) (Miss.Ct.App.2006). The Court of Appeals weighed the factor only slightly in the defendant’s favor where the defendant demanded a speedy *786 trial two-and-a-half years after arrest and indictment, and thereafter “his case was promptly assigned to the court’s docket, and he was brought to trial about six months later.” Gray v. State, 926 So.2d 961, 972-73 (¶¶28, 32) (Miss.Ct.App.2006).
¶ 12. Taylor did not demand a speedy trial between his arrest and indictment; rather, he made the demand one year after he was indicted. The trial court then acted promptly in setting Taylor’s trial date for a short three-and-a-half months after' he made the demand. Based on the Court’s precedent, the instant factor could be weighed against Taylor because he failed to demand a speedy trial in a timely manner. However, because Taylor did eventually make a demand, and because the State and the trial court promptly responded, the factor is neutral.
4. Prejudice to the Defendant
¶13. The Court often has held that prejudice did not result and, thus, the defendant’s right to a speedy trial was not violated, where the delay was equal to or greater than the delay in the instant ease. In Johnson v. State, 680 days passed from Johnson’s arrest to his trial. The delay was presumptively prejudicial, but the only reason for the delay was an overcrowded docket, and Johnson failed to show actual prejudice resulting from the delay, so the Court held that his right to a speedy trial had not been violated. Johnson, 68 So.3d at 1242-46 (¶¶ 8-22). In Moffett v. State, the delay totaled 1,666 days, “[t]hus, a presumption of prejudice arfóse], triggering an analysis of the other three factors (reason, assertion, and prejudice).” Moffett v. State, 49 So.3d 1073, 1087 (¶ 37) (Miss.2010). The State cited valid reasons for the delay, the defendant had not timely asserted his right to a speedy trial, and the prejudice factor leaned only slightly in the defendant’s favor. Id. at 1087-88 (¶¶ 38-41). Weighing all of the factors, the Court held that the defendant’s right to a speedy trial had not been violated. Id. at 1088 (¶ 42).
¶ 14. The Court has held that a “delay of 1,430 days, while extreme, did not violate [a defendant’s] statutory right to a speedy trial.” Manix v. State, 895 So.2d 167, 175 (¶ 15) (Miss.2005). In Manix, most of the delay “resulted from the crime lab backlog or appointment of new counsel,” so the reason-for-delay factor weighed only slightly against the State. Id. at 176 (¶20). As to prejudice, Manix claimed that the delay resulted in “negative emotional, social, and economic impacts on his life.” Id. at 177 (¶ 23). However, “Mississippi case law does not recognize such impacts as prejudice.” Id. The Court held that Manix’s right to a speedy trial was not violated because “any presumptive prejudice Manix may have suffered is overwhelmed by the absence of actual prejudice.” Id. at 177 (¶ 24).
¶ 15. In Sharp v. State, 786 So.2d 372 (Miss.2001), the delay amounted to 731 days, but the defendant was largely responsible for the delays. Regarding prejudice, the Court wrote:
The only prejudicial effect Sharp alleges was caused by the delay was his incarceration for nearly two years without a trial. Generally, proof of prejudice entails the loss of evidence, death of witnesses, or staleness of an investigation. “The possibility of impairment of the defense is the most serious consideration in determining whether the defendant has suffered prejudices as a result of delay.” ... In the present case, these things did not change; the trial unfolded the same as if it had been held much earlier_ “[T]he entire drug transaction was recorded on a video tape that was viewed by the jury, [Sharp’s] potential defenses were limited, and no real *787 impairment can be claimed in this case.” ... In addition, this Court has held that incarceration alone is not enough to warrant a reversal_ [H]is entire argument is unconvincing.
Sharp, 786 So.2d at 381 (¶ 19) (internal citations omitted). Like the arguments in Manix and Sharp, Taylor’s prejudice argument is unconvincing.
¶ 16. To determine whether the delay resulted in actual prejudice, the Court considers three interests that the right to a speedy trial was meant to protect: “(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.” Jenkins v. State, 947 So.2d 270, 277 (¶ 21) (Miss.2006) (quoting Mitchell v. State, 792 So.2d 192, 213 (Miss.2001); Barker v. Wingo, 407 U.S. 514, 532, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). Taylor claims that the “most obvious prejudice” he suffered was “oppressive pretrial incarceration and the anxiety and concern of awaiting trial.” He also claims that his “defense was inherently prejudiced” because he was incarcerated. Taylor is simply repeating the factors to be considered, and he provides nary a scintilla of evidence to support his claims. The Court “will not indulge in an assumption ... that [Taylor] experienced anxiety and concern from his incarceration.” Johnson, 68 So.3d at 1245 (¶ 17). Finally, Taylor asserts that the delay resulted in his inability to secure an alibi witness. However, he identified no such witness, and he provided no support to substantiate the claim. The Court has held that, generally, “proof of prejudice entails the loss of evidence, the death of witnesses, or the staleness of an investigation.” Jenkins, 947 So.2d at 277 (¶ 21) (citing Sharp, 786 So.2d at 381). Taylor failed to show how his defense was impaired by the delay. The prejudice factor weighs against Taylor.
5. Balancing the Barker factors
¶ 17. The length of delay is presumptively prejudicial and serves to trigger the Barker analysis. The reason for the delay being the crowded docket weighs only slightly against the State, if at all. Assertion of the right to a speedy trial is neutral. The actual-prejudice factor weighs strongly against Taylor. Because the other factors are neutral or only slightly in Taylor’s favor, at best, the unquestionable lack of actual prejudice outweighs the other factors. “[W]here, as here, the delay is neither intentional nor egregiously protracted, and where there is a complete absence of actual prejudice, the balance is struck in favor of rejecting [the defendant’s] speedy trial claim.” Watts v. State, 733 So.2d 214, 236 (¶ 67) (Miss.1999) (quoting Rhymes v. State, 638 So.2d 1270, 1275 (Miss.1994)). Balancing all the Barker factors — and considering the overwhelming precedent of what constitutes prejudice and the undisputed absence of actual prejudice here — leads to a holding that Taylor’s right to a speedy a trial was not violated.
¶ 18. Pursuant to Lindsey v. State, the Court has reviewed the briefs and conducted an independent and thorough review of the record, and we conclude that there are no issues that warrant reversal. Taylor’s conviction and sentence are affirmed.
¶ 19. CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIVE (5) YEARS, WITH THREE (3) YEARS SUSPENDED, AND FIVE (5) YEARS SUPERVISED PROBATION, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
*788 RANDOLPH, P.J., LAMAR, CHANDLER, AND PIERCE, CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J.; KITCHENS, J., JOINS IN PART. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, JJ.; WALLER, C.J., JOINS IN PART.

. Lindsey v. State, 939 So.2d 743 (Miss.2005).

. In Bailey v. State, the Court recognized that when the delay is the result of unintentional Causes, including a crowded docket or that the grand jury did not convene during a certain term, the defendant must show prejudice for the reason-for-delay factor to be weighed against the State. Bailey, 463 So.2d at 1062-63 (citing Diddlemeyer v. State, 398 So.2d 1343, 1344-45 (Miss.1981) ("The delay in the trial resulted from the fact that the grand jury was not in session when the crime was committed and because of a crowded docket. It was not an unreasonable delay in trial, appellant has not shown prejudice, and we find no merit in this contention."); Macon v. State, 295 So.2d 742, 744 (Miss.1974) ("The reason for the delay was that a grand jury was not called for the May term. The record is absent of any showing that defendant was prejudiced. Therefore, the Court holds that the defendant was not entitled to be discharged on the asserted ground that he did not receive a speedy trial.”)). In Bailey, the Court held that unintentional delays — in that case, the grand jury not being convened, negligence in serving a warrant, and a crowded docket— must be considered "with the reminder that prejudice must be shown for Macon and Diddlemeyer not to apply.” Bailey, 463 So.2d at 1063.