# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00658-COA

**BRADLEY KEVIN KING A/K/A BRADLEY
KEVIN KING, SR. A/K/A BRADLEY KING**                    **APPELLANT**

v.

**STATE OF MISSISSIPPI**                                        **APPELLEE**

DATE OF JUDGMENT:              05/18/2023
TRIAL JUDGE:                  HON. MICHAEL PAUL MILLS JR.
COURT FROM WHICH APPEALED:    LEE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                              BY:  W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY:  ABBIE EASON KOONCE
DISTRICT ATTORNEY:            JOHN DAVID WEDDLE
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                  AFFIRMED - 12/10/2024
MOTION FOR REHEARING FILED:

### BEFORE CARLTON, P.J., WESTBROOKS AND LAWRENCE, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     On May 11, 2023, a Lee County Circuit Court jury convicted Bradley King of second-degree murder.  The circuit court sentenced him to forty years in the custody of the Mississippi Department of Corrections (MDOC), with ten years suspended, thirty years to serve, and five years of post-release supervision.  King's counsel on appeal submitted a brief pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005).  After independently reviewing the record, we find no arguable issue for appeal.  Therefore, we affirm King's conviction and sentence.

### FACTS AND PROCEDURAL HISTORY

¶2.     On July 24, 2021, Rachelle Dodd and her boyfriend, Michael Portillo, met with their friends, Telisa "Sissy" Benson and Randy "Buzzard" Benson,[1] to purchase a vehicle from them. They met at the Bensons' apartment in Tupelo, Mississippi. While waiting for a tow truck to pick up the vehicle, Dodd and Sissy walked outside the front of the building, while Portillo and Buzzard stayed in the apartment. While they were outside, Dodd and Sissy observed an SUV riding near a store. King got out of the passenger side of the car, waved a gun, and asked where Buzzard was. Sissy told King that he was in the apartment. She testified that King bumped into her and put the gun in her face, so she threw him to the ground and ran to a neighbor's house. Meanwhile, Dodd ran to Portillo's cousin's house down the street and told them to call 911. They both testified that they heard shots in the distance.

¶3.     Portillo was the only witness present when King entered the apartment. He testified that King came in waving a gun and told Buzzard, "You owe me $1,200. I want my money. I want my money or I'm going to shoot you." Portillo attempted to leave, but King pointed the gun at him and made him sit back down. Buzzard and King then went back and forth for some time until King eventually turned to leave. As he was heading out the door, Buzzard told King again that he did not have the money. King began throwing objects at Portillo and Buzzard. King attempted to shoot Buzzard, but the gun's safety was still on. After he disengaged the safety, he shot Buzzard twice. In response, Buzzard grabbed an iron lamp

---

[1] He was also known around the community as "Buzz."

and threw it at King. The lamp caught a wire and knocked out the lights in the apartment. Several more shots were fired. Portillo testified that he lay down and hid under some junk that was in the room until he did not hear King anymore. Portillo said that he heard Buzzard trying to call his name, but eventually Buzzard let out a long breath, and the room became silent. Portillo then escaped out of a window and ran to his cousin's house to find Dodd.

¶4. After receiving multiple 911 calls, Deputy Bryan Pounders and Deputy Thomas Pearson with the Lee County Sheriff's Department responded to the scene. When they arrived in the apartment, they found Buzzard's body lying on his back with his face up. Deputy Pounders explained there was blood on his torso, his "legs were bent in a very uncomfortable position," and he was unresponsive. Corporal Lance Miller arrived and helped Deputy Pounders and Deputy Pearson secure the scene. Corporal Miller contacted Investigator Rachel Clock and requested her presence at the scene. Investigator Clock took several photos and collected a shell casing. She also interviewed several people on the scene. When she spoke with Sissy and Dodd, they both gave the same account and told her that King fired the shots. Portillo and Dodd were eventually transported to the Lee County Sheriff's Department for questioning.

¶5. The Sheriff's Department and Investigator Clock received tips from the public that King was hiding in a cabin located in the Tombigbee State Park. They enlisted the help of the United States Marshal Service and the Mississippi Department of Wildlife, Fisheries & Parks. When they found King, he was cooperative and helped them locate a .22-caliber

Ruger handgun that he had hidden in the woods. Buzzard's body was examined by the medical examiner's office, and all the evidence collected was sent to the crime lab for testing. Investigator Clock testified that the "investigation revealed that Mr. Bradley King [was] the individual responsible for firing the weapon that ultimately caused the death of Mr. Randy Mark Benson."

¶6. During trial, King gave his account of the incident and explained his motive for shooting Buzzard. He testified that he was homeless in April 2021; however, he received a $1,200 stimulus check and planned to purchase a camper from a man named Ricky Hester. Hester never showed up to their meeting spot, so King was left stranded without a place to stay. That same night, King came into contact with Sissy and Buzzard, who offered him a place to stay. He said they informed him that the place would be $175 a night. When he arrived, he described it as a "one-room little shack full of garbage." While there, he explained that he asked for something to drink, and Sissy gave him a drink. Shortly after, his stomach began to hurt badly, and he felt like he had been drugged. He went outside and lay down on a piece of plywood on the front porch. Eventually, he was awoken by the police telling him he had to get up and leave. He testified that his pistol and all the money that was in his wallet was missing. He was dropped off at his sister's house in Nettleton, Mississippi. However, when he arrived, his sister thought he was drunk. She called the police, and King was arrested and taken to the Itawamba County jail. The police also thought King was drunk, so they strapped him to a chair. King eventually began to bleed, and when the police noticed,

4

they called an ambulance. King was transported to a hospital in Tupelo, Mississippi. He testified that he stayed in the hospital for a week and a half. When he was released, he stayed with his daughter, Kalli Collier, and her husband, Nathan Collier. One day, Nathan received a phone call from Sissy and Buzzard. When Nathan told King who it was, King asked Nathan to give him a ride to their apartment so that he could get his money back. He testified:

> [W]e pull up, and there was two people standing outside talking on the telephone. And I walk up to them and I said, Where is Buzzard? She points to the building. And the building didn't have air conditioning. It was hot, and the front door was standing wide open. I walked up on the porch to the front door, and Buzzard did this right here. He motioned for me to come in. I walked into the house, and I said, Where is my money? I want my money. He said, I ain't got no money. And we kept on back and forth, you know. Said, I'm going to get my money. He was saying, I ain't got no money. You ain't getting no money. And I said, I tell you what. I'm going to leave, but I'm coming back, and I want my money. And when I did, I turned to the right like this right here. Well, as I was turning back this way right here, a bright light went off and then orange sparks and boom in my left eye. And when it did, I thought I had been shot, so I fell backwards. And everything went black when that happened, because, come to find out, it was a big brass touch lamp. And when he grabbed it, it came on and brightened up the whole room. And then when he threw it, it unplugged from the wall, and that's where the sparks came from. And, bam, hit me here and everything went black. And I shot as I was going backwards. Then I went out the door and left. I never seen the man shot.

¶7. A Lee County grand jury indicted King for first-degree murder on February 17, 2022. The trial commenced on May 8, 2023. The State called fourteen witnesses during its case-in-chief. At the conclusion of the State's case-in-chief, King moved for a directed verdict. The trial court denied his motion. After the trial court informed him of his rights, King was the only witness to testify on his behalf. The Lee County Circuit Court jury received instructions

5

for the elements of first-degree murder and second-degree murder. The jury ultimately found King guilty of second-degree murder. On May 18, 2023, King was sentenced to forty years in the custody of MDOC, with ten years suspended, thirty years to serve, and five years of post-release supervision.

¶8. On May 24, 2023, King filed a motion for judgment notwithstanding the verdict or for a new trial. The trial court denied that motion. King filed a notice of appeal on June 2, 2023.[2]

## DISCUSSION

¶9. *Lindsey* establishes the "procedure to govern[s] cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal." *Lindsey*, 939 So. 2d at 748 (¶18). Counsel must file and serve a brief that complies with Mississippi Rule of Appellate Procedure 28(a)(1)-(5), (8). *Id*. Additionally, counsel must

> certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in

---

[2] On July 7, 2023, King received a deficiency notice for failure to pay the docket fee and submit a certificate of compliance. The appeal was subsequently dismissed on July 25, 2023. On July 27, 2023, King filed a motion to proceed on appeal in forma pauperis. The circuit court granted the motion on July 31, 2023. On August 7, 2023, King filed a motion to reinstate his appeal. This Court granted the motion on September 7, 2023.

sentencing.

*Id*. "Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief." *Id*. If the defendant raises an arguable issue, or should the appellate court discover any arguable issue upon review of the record, "the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal." *Grayson v. State*, 390 So. 3d 1017, 1020 (¶9) (Miss. Ct. App. 2024) (quoting *Lindsey*, 939 So. 2d at 748 (¶18)).

¶10. In the case sub judice, King's counsel complied with all the requirements set out in *Lindsey*. The brief submitted by counsel asserted that "counsel diligently searched the procedural and factual history of this criminal action and scoured the record searching for any arguable issues which could be presented to the Court on Bradley Kevin King's behalf in good faith for appellate review, and upon conclusion, have found none." Counsel also confirmed that a copy of the brief and a letter was mailed to King informing him of his right to file a pro se supplemental brief. Lastly, counsel requested, and we granted, King an additional forty days to file a pro se supplemental brief. King ultimately did not submit a supplemental brief.

¶11. In accordance with *Lindsey*, this Court has "reviewed the briefs and conducted an independent and thorough review of the record, and we conclude that there are no issues that warrant reversal." *Green v. State*, 242 So. 3d 923, 925 (¶9) (Miss. Ct. App. 2018) (quoting

7

*Taylor v. State*, 162 So. 3d 780, 787 (¶18) (Miss. 2015)).  Accordingly, we affirm the circuit

court's judgment of conviction and sentencing.

¶12.   **AFFIRMED.**

      **BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.   WEDDLE, J., NOT PARTICIPATING.**