# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00481-COA

**JAMES CARROLL A/K/A JAMES MALCOLM CARROLL, III A/K/A JAMES M. CARROLL**    APPELLANT

**v.**

**STATE OF MISSISSIPPI**    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/01/2024 |
| TRIAL JUDGE: | HON. MATTHEW GORDON SULLIVAN |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES JAMES CARROLL (PRO SE) |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | CHRISTOPHER DOUGLAS HENNIS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/14/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., EMFINGER AND WEDDLE, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.    A Simpson County Circuit Court jury found James Carroll guilty of two counts of child exploitation, and the trial court sentenced him to serve consecutive forty-year terms for each count in the custody of the Mississippi Department of Corrections (MDOC). The circuit court then denied Carroll's motion for judgment notwithstanding the verdict (JNOV) or a new trial.

¶2.    On appeal, Carroll's appointed counsel has filed a brief pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005), stating that after the "entire record and transcript were

scrupulously reviewed," "counsel [was] unable to argue, in good faith, any prejudicial error." Carroll filed a pro se supplemental appellant's brief, asserting several claims of error.[1] Upon review, we find no reversible error, and we affirm Carroll's convictions and sentences.

**Facts and Procedural History**

¶3. In 2020, Carroll began working for the City of Braxton, Mississippi, performing general building and water-system maintenance. In May 2021, the City issued Carroll a new Apple iPhone for work because he was expected to be on call "24/7." When Carroll's employment was terminated in December 2021, he returned the work-issued iPhone the following day.

¶4. After city employees found suspicious text messages on the iPhone that appeared to be related to "illegal activity," the phone was turned over to the Simpson County Sheriff's Department. In addition to texts indicating "narcotics-related activity," Investigator Adam Scarborough discovered that the iPhone contained "some pornography"; so he took the phone to the Mississippi Attorney General's Cyber Crimes Division (Cyber Crimes Division) to extract the iPhone's contents forensically.

¶5. When the Cyber Crimes Division found images of child pornography on the iPhone, law enforcement obtained an arrest warrant for Carroll and a search warrant for his residence. Carroll was arrested during a traffic stop, and law enforcement seized an Android BLU View cellphone that Carroll had purchased. Ashley Boldig, a digital forensic examiner with the Attorney General's Office, examined both phones (the work-issued iPhone and Carroll's

---

[1] Mississippi Rule of Appellate Procedure 28(b) provides that "[a]n appellant in a criminal appeal may file a pro se supplemental Brief of the Appellant."

personal Android phone). Images of children engaged in sexually explicit conduct were found on both phones.

¶6. A grand jury indicted Carroll on October 14, 2022, on two counts of child exploitation. *See* Miss. Code Ann. § 97-5-33(5) (Rev. 2020). A jury trial was held on March 27, 2024.

¶7. City clerk Pam Coward testified that the City had issued Carroll a "[b]rand-new" iPhone in May 2021, which was "[j]ust for customers to call for after-hour emergencies or during-the-day emergencies." Coward said that when Carroll was terminated, he turned in the phone to her the following day. His excuse for waiting a day to turn it in was that he "had taken pictures of [the City's] Christmas decorations . . . he wanted to retrieve off the phone." When she inspected the phone, "all the contacts had been deleted," and "in the text messages, there was some verbiage that [she] considered, like, illegal activity."

¶8. Mayor Michael Arinder testified that Carroll had lost the first work-issued iPhone; so the City installed Life360 on the new iPhone since "it belonged to the Town." He said Carroll was terminated for "[f]ailure to follow the drug-testing procedures accordingly." When Mayor Arinder inspected the phone, he discovered text messages of "potentially drug-related activity"; so he gave the local sheriff's department permission to search the phone.

¶9. Scarborough, a narcotics investigator with the Simpson County Sheriff's Department, was contacted by Mayor Arinder about "a phone from a past employee that had some questionable statements on it." Mayor Arinder gave Scarborough permission to search the iPhone, and Scarborough found that the phone contained "some pornography." Scarborough

contacted the Cyber Crimes Division "to do a phone extraction," which found that the phone contained child pornography. Scarborough obtained an arrest warrant for Carroll on February 7, 2022, as well as "a search warrant for his residence" to see if "there was any more child pornography." The following day, law enforcement stopped Carroll in his truck and took him into custody. Another phone (an Android) was seized from the truck. Two "busted cell phones . . . of no evidential value" were also found at Carroll's residence. Carroll admitted to Scarborough he had looked at pornography on his work iPhone, but Carroll insisted that "there shouldn't be any child pornography on the phone." The investigator acknowledged that he found no pornography at Carroll's residence.

¶10. Boldig was accepted as an expert in the field of digital forensics. Boldig discovered "child sexual abuse material" on the iPhone, in addition to internet search terms for child pornography from August 2021 to December 2021 (e.g., "naked teen boys" and "tweens stripping"). She also found child sexual-abuse material (e.g., "depict[ing] teen boys exposing their genitalia and in compromising positions") on the Android phone. Boldig admitted that while it was clear child pornography had been downloaded and accessed, it was unclear who had downloaded the material. However, her testimony did indicate there were work-related calls and texts coming into the iPhone at or near the same time that the child pornography was being viewed.

¶11. The State rested, and the trial court denied Carroll's motion for a directed verdict. Carroll testified on his own behalf. Carroll said he had moved to Braxton in 2020 to live with a platonic female friend after his limousine business in Jackson closed during the

4

COVID-19 pandemic. His friend's adult son, "Trey," moved in with them shortly thereafter. Carroll helped his friend with maintenance on her house, which prompted the former mayor of Braxton to ask Carroll to be a part-time maintenance worker for the City. Three months later, he was asked to take over the City's water department as well, and he was assigned a work phone.

¶12.   Carroll acknowledged that he used the work iPhone for "personal stuff." His bedroom did not have outlets in it because it was added on to the house; so Carroll would plug his iPhone into an outlet outside his door "and leave it there." He claimed Trey would "sometimes" borrow the iPhone, but Carroll said he never felt the need to put a passcode on the phone.

¶13.   Carroll thought law enforcement pulled him over because his truck did not have a license plate; he was "floored" when they informed him he was being charged with child pornography. He waived his *Miranda* rights,[2] and he signed a form for his consent to search. When asked about the content on his phones, Carroll insinuated that Trey had drug issues and past criminal issues, and Carroll claimed that some of the search terms were "a clear-cut sign [Trey was] using my phone." However, Scarborough provided rebuttal testimony that Trey was incarcerated from November 26, 2021, to December 11, 2021. Boldig also testified on rebuttal that child pornographic images had been accessed from Carroll's work iPhone during that period when Trey had been incarcerated.

¶14.   The jury found Carroll guilty of both counts of child exploitation. On April 1, 2024,

---

[2] *See Miranda v. Arizona*, 384 U.S. 439 (1966).

the trial court sentenced Carroll to forty years for each count, with the sentences to run consecutively. He was also ordered to register as a sex offender. Carroll filed a motion for a JNOV or, alternatively, for a new trial on April 3, 2024, which the trial court denied after a hearing on the matter.

¶15. Carroll filed a timely appeal. His appointed appellate counsel, finding no arguable issues or prejudicial error, filed a *Lindsey* brief. *See Lindsey*, 939 So. 2d at 748 (¶18). Carroll timely filed a pro se supplemental brief in accordance with Rule 28(b) of the Mississippi Rules of Appellate Procedure.

## Discussion

¶16. Appellate counsel filed a *Lindsey* brief, representing that the case presents no arguable issues for appeal. *Lindsey* establishes the "procedure to govern cases where appellate counsel represents an indigent criminal defendant and does not believe his or her client's case presents any arguable issues on appeal." *Lindsey*, 939 So. 2d at 748 (¶18). Counsel must file a brief in compliance with Mississippi Rule of Appellate Procedure 28(a), as well as

> certify that there are no arguable issues supporting the client's appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client's right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.

*Lindsey*, 939 So. 2d at 748 (¶18). Counsel must then send a copy of the brief to the defendant, informing him or her "that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief." *Id*.

6

¶17. Carroll exercised his right to file a supplemental pro se brief. *See* M.R.A.P. 28(b). In his brief, Carroll raises several arguments, many of which allege matters not in the trial court's record. Furthermore, although Carroll cites some legal authority, we agree with the State that his brief does not "adequately cite the record or make meaningful arguments based on authority to support his claims." *See Reading v. Reading*, 350 So. 3d 1195, 1199 (¶19) (Miss. Ct. App. 2022) (holding that Rule 28(a)(7) of the Mississippi Rules of Appellate Procedure "does not simply require a party to mention authority; the authority must be used to develop the argument in a meaningful way").

¶18. Nevertheless, although the State argues we should "decline to address" the issues raised in Carroll's pro se brief, appellate courts have a "role under *Lindsey* . . . to review the record and the pro se brief to determine whether arguable issues exist that warrant supplemental briefing by appellate counsel." *Hollis v. State*, 320 So. 3d 518, 522-23 (¶8) (Miss. 2021) (citing *Lindsey*, 939 So. 2d at 748 (¶18)). We will therefore review those arguments Carroll raised.

## I. Ineffective Assistance of Counsel

¶19. Carroll asserts several claims of ineffective assistance. Generally, a defendant's claims that his defense counsel was ineffective "are more appropriately brought during post-conviction proceedings." *Murray v. State*, 345 So. 3d 610, 621 (¶26) (Miss. Ct. App. 2022) (quoting *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020)). Such claims are addressed on direct appeal "when [1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines

that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id*. We may also address ineffective-assistance-of-counsel claims "on direct appeal when the record affirmatively shows that the claims are without merit." *Id*. The State has not stipulated the record is sufficient to review Carroll's claim and asserts that we "should decline to address" this issue. We agree.

¶20. Some of Carroll's allegations of ineffective assistance refer to matters that cannot be determined from the court's record.[3] "Review on direct appeal of an ineffective-assistance-of-counsel claim is confined strictly to the record." *Jackson v. State*, 73 So. 3d 1176, 1181 (¶20) (Miss. Ct. App. 2011). As the State notes, "[m]ost of Carroll's complaints about counsel's omissions fall into the category of trial strategy" (e.g., counsel's failure to conduct investigations, hire an expert witness, or make certain objections to testimony). In *Brown v. State*, 282 So. 3d 1192, 1200 (¶30) (Miss. Ct. App. 2019), our Court declined to address a defendant's claim of ineffective assistance of counsel because it "involve[d] our consideration of defense counsel's trial strategy," and "[t]his point is beyond the contents and face of the record."

¶21. Because this issue involves consideration of matters outside the record's contents, we dismiss Carroll's claims of ineffective assistance without prejudice to his right to assert these claims in a properly filed motion for post-conviction collateral relief (PCR).

---

[3] For example, Carroll argues that his attorney "lacked the time to put the effort into [his] case" because his attorney was the city prosecutor for Ridgeland, Mississippi. Carroll also claims defense counsel "never brings up about Trey's . . . roommate who moved in October 2021." At no time did Carroll or any witness mention another person living in the home (other than Trey and Trey's mother) during the trial.

8

## II. Grossly Disproportionate Sentencing

¶22. Noting he was a "first-time offender," Carroll contends his sentences are grossly disproportionate, as they exceed his life expectancy. "By statute, any person who violates any provision of section 97-5-33 may be fined a maximum of $500,000 and a minimum of $50,000, and the person may be imprisoned for a maximum of forty years and a minimum of five years." *Matheny v. State*, 289 So. 3d 328, 335 (¶17) (Miss. Ct. App. 2020) (citing Miss. Code Ann. § 97-5-35 (Rev. 2006)). Because Carroll made no objection at his sentencing nor raised this issue in his posttrial motion, we are "under no obligation to address the issue." *Triplett v. State*, 207 So. 3d 1288, 1291 (¶6) (Miss. Ct. App. 2016).

¶23. Regardless, "[s]entencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." *Id*. at (¶7). In *Triplett*, we addressed this argument when sixty-one-year-old Robert Triplett argued that his forty-year sentence for child exploitation "amount[ed] to a life sentence." *Id*. Noting Mississippi's "general rule . . . that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute," our Court found the trial court's sentence was not an abuse of discretion. *Id*.; *see also Alexander v. State*, 406 So. 3d 774, 804-05 (¶¶79-81) (Miss. Ct. App. 2024) (finding the trial court's sentencing of the defendant to serve the maximum forty-year sentence on six counts (240 years) for child exploitation was within the statutory limits and not grossly disproportionate).[4]

---

[4] The majority opinion in this case was divided into two parts, with Judge McCarty authoring this holding in Part Two, joined by five other judges. Judge Emfinger dissented in part to Part Two of the majority as to the trial court's jurisdiction in three of the counts.

¶24.    Carroll's sentences do not exceed the maximum term allowed by statute, and he has not shown that his sentences are grossly disproportionate or unconstitutional. *See Mapp v. State*, 310 So. 3d 335, 338 (¶7) (Miss. Ct. App. 2021) ("Generally, sentences that do not exceed the maximum punishment allowed by statute will not be considered grossly disproportionate." (quoting *Smith v. State*, 291 So. 3d 1, 6 (¶13) (Miss. Ct. App. 2019))).[5] Furthermore, the evidence showed that Carroll's work iPhone contained approximately twenty-seven images of child pornography (Count I) and his Android contained seven images and one video (Count II), and the trial judge may have taken that evidence into consideration in sentencing Carroll to the maximum terms. Therefore, we find no error in the trial court's sentencing.

### III.    Jury Instruction S-3 and Jury Selection

¶25.    The trial court gave Jury Instruction S-3, which defined "sexually explicit conduct," one of the elements of the crime of child exploitation (i.e., the "visual depiction of an actual child engaging in sexually explicit conduct"). The jury instruction defined "sexually explicit conduct" as "actual or simulated":

> (i) Oral genital contact, oral anal contact, or sexual intercourse whether between persons of the same or opposite sex;
> (ii) Bestiality:
> (iii) Masturbation;
> (iv) Sadistic or masochistic abuse;

---

[5] Carroll also claims he had been offered a plea deal for a thirty-year sentence, with only ten years to be served in MDOC's custody and twenty years suspended, which he declined. This plea agreement is not contained in the trial court's record. "[T]his Court may not act upon or consider matters which do not appear in the record and must confine itself to what actually does appear in the record." *Brown v. State*, 54 So. 3d 882, 884 (¶10) (Miss. Ct. App. 2011).

10

(v) Lascivious exhibition of the genitals or pubic area of any person; or

(vi) Fondling or other erotic touching of the genitals, pubic area, buttocks, anus or breast.

Carroll claims there was no evidentiary basis for Jury Instruction S-3 because "there was no explicit sexual contact with anyone"; so the instruction was "irrelevant to [his] case."

¶26.    Carroll's attorney did not object to this instruction.  "[A] defendant's failure to object to a jury instruction at trial bars that issue on appeal." *Spiers v. State*, 361 So. 3d 643, 654 (¶36) (Miss. 2023).  Carroll also failed to raise this issue in his posttrial motion.  Thus, because this issue was not raised before the trial court, the issue "is procedurally barred from consideration on appeal." *See Fox v. State*, 412 So. 3d 426, 443-44 (¶61) (Miss. Ct. App. 2024) (finding defendant's failure to challenge a juror during trial, or to "raise any concerns about" the juror in his posttrial motion, waived the issue on appeal).  Waiver notwithstanding, Boldig expressly testified that both phones contained images of a child engaged in sexually explicit conduct, and those images were admitted into evidence. Therefore, we find this claim is not supported by the record.

¶27.    Carroll further contends that the "jurors should have been asked if they can be unbias[ed] and fair in trial proceedings."  Specifically, he refers to "any prejudice toward[] people with a different sexual orientation," as Carroll testified that he is "gay."  We find Carroll has not demonstrated any prejudice resulting from the voir dire process. Furthermore, the record indicates that the trial court expressly told potential jurors that they were to "base their decision on . . . two things, the law and the evidence," and that the purpose of the voir dire process was "to get a fair and impartial jury."  Several venire

11

members were also asked by the prosecution if they could be fair and impartial, and they responded affirmatively.[6]

¶28. Finally, Carroll claims that the jurors did not follow instructions. However, Carroll has failed to cite any facts in the record or specify which instruction(s) he alleges that the jurors failed to follow. This Court "must 'decide each case by the facts shown in the record, not assertions in the brief.'" *Scott v. State*, 24 So. 3d 1039, 1041 (¶9) (Miss. Ct. App. 2010) (quoting *Oakwood Homes Corp. v. Randall*, 824 So. 2d 1292, 1293 (¶3) (Miss. 2002)). We find this issue is waived and without merit.

### IV. Denial of the Motion for a Continuance

¶29. On March 25, 2024, two days before the trial date, Carroll's defense counsel filed a motion for continuance, noting the State had recently provided more discovery (i.e., printouts from the phone extraction) and requesting more time to review those materials. Defense counsel renewed the motion at trial but acknowledged that the defense had prior access to the phone. The trial court denied the motion for a continuance.[7] Carroll argues that the denial of the motion put the defense "at a distinct disadvantage," rendering the trial "unfair."

---

[6] To the extent Carroll is arguing his defense counsel was ineffective by failing to question jurors regarding potential bias, this is a matter that cannot be determined from the record; so Carroll may raise this argument in a separately filed PCR motion.

[7] Although denying the motion, the trial court did assure defense counsel:

> Well, if something comes up about it during trial, you believe it's that hasn't been provided in discovery or some kind of new evidence that you weren't aware of, you're welcome to bring up some sort of objection or motion during trial, outside the presence of the jury and inform me again that this new information has prejudiced you in some way, and elaborate on it on the record when it does – if it does arise.

¶30. Carroll failed to raise this issue in his posttrial motion for a JNOV or a new trial. "[I]n order to preserve the denial of a continuance for appeal, the issue must be raised in a post-trial motion for a new trial." *Williamson v. State*, 375 So. 3d 1158, 1173 (¶44) (Miss. Ct. App. 2023). This issue is waived.

¶31. Notwithstanding the waiver, "[i]t is hornbook law that the grant or denial of a continuance is within the sound discretion of the trial judge." *Id*. at 1173-74 (¶45). We will not reverse a trial court's denial of a continuance "unless manifest injustice results." *Id*. at 1174 (¶46) (quoting *Jackson v. State*, 231 So. 3d 257, 260 (¶15) (Miss. Ct. App. 2017)). "The burden of showing manifest injustice is not satisfied by conclusory arguments alone; rather[,] the defendant is required to show concrete facts that demonstrate the particular prejudice to the defense." *Id*. (quoting *Jackson*, 231 So. 3d at 264 (¶34)). We find Carroll has failed to demonstrate in any "concrete" way how he was prejudiced by the denial of the continuance. Particularly, since his defense counsel acknowledged that the 213 pages of material in question were merely printouts from the "phone dump," which had been made available to the defense since January 2023, as acknowledged by Carroll's attorney. Accordingly, we find no abuse of discretion in the trial court's ruling to deny a continuance.

## V. Illegal Search and Seizure

¶32. Carroll claims his home was illegally searched because the justice court judge signed the search warrant on February 10, 2022, but his residence was searched two days prior. Scarborough testified that he obtained the search warrant for Carroll's residence on February 7, 2022, and executed the search on February 8.

¶33. Because the copy of the search warrant is attached only to Carroll's brief, it is not part of the court's record. *See Hampton v. State*, 148 So. 3d 1038, 1042 (¶11) (Miss. Ct. App. 2013) (holding that we "cannot accept evidence asserted in or attached to a brief"). In any event, we find no error, as no evidence obtained from Carroll's residence was submitted at trial. Additionally, both the City and Carroll gave Scarborough permission to search the relevant phones containing the images of child pornography. Accordingly, this issue is without merit.

### VI.    Lack of Technical Expert

¶34. Carroll summarily asserts that the lack of a technical expert for the defense caused "profound damage and harm to [his] ability to defend the case." However, Carroll never sought to retain an expert to assist with his defense; nor did Carroll request funds to hire an expert to aid in his defense. "The well-recognized rule is that a trial court will not be put in error on appeal for a matter not presented to it for decision." *Moffett v. State*, 49 So. 3d 1073, 1088 (¶41) (Miss. 2010). Furthermore, Carroll does not allege with specificity nor demonstrate how a "technical expert" would have assisted his defense.[8]

### Conclusion

¶35. Our Court has "conducted an independent and thorough review of the record, and we conclude that there are no issues that warrant reversal." *Taylor v. State*, 162 So. 3d 780, 787 (¶18) (Miss. 2015). Accordingly, we affirm Carroll's convictions and sentences. However,

---

[8] Should Carroll wish to argue that defense counsel was ineffective for failing to hire an expert, as we have already discussed, he is entitled to do so in a properly filed PCR motion.

14

we dismiss Carroll's claim of ineffective assistance of counsel without prejudice, allowing him to raise that issue in PCR proceedings if he so chooses.

¶36.  **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**