# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00245-COA

**TIMOTHY DEWAYNE TAYLOR A/K/A**                            **APPELLANT**
**TIMOTHY D. TAYLOR A/K/A TIMOTHY**
**TAYLOR**

**v.**

**STATE OF MISSISSIPPI**                                                   **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/14/2023 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JULIANNE KAY BAILEY |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/18/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND WEDDLE, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. This appeal stems from Timothy Dewayne Taylor's conviction and sentence for aggravated assault with a deadly weapon. A Jefferson Davis County Circuit Court jury found Taylor guilty of the crime charged, and the circuit court subsequently sentenced Taylor to serve twenty years in the custody of the Mississippi Department of Corrections (MDOC). On appeal, Taylor asserts that his constitutional right to a speedy trial was violated after a span of 2,883 days passed from the day he was arrested to the date his trial began. After a review of the record, and considering the totality of the circumstances, we affirm the trial

court's decision and affirm Taylor's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.    On March 25, 2015, Elvadus Rhodes was visiting his ex-wife at the Meadow Hill Apartments in Prentiss, Mississippi.  While Rhodes was walking down the sidewalk, Taylor came out of a nearby apartment and said to Rhodes, "You must think I'm playing about my money."  Taylor and Rhodes were friends, and Taylor had loaned Rhodes ten dollars to get to work earlier that morning.  Rhodes said, "Tim, man," and then Taylor pulled out a pistol and shot at Rhodes.  Taylor's bullet missed Rhodes, who then "took off running."  As he was running away, Rhodes could hear shots being fired at him, and one bullet hit him in the back, causing him to fall the ground.

¶3.    A bystander attempted to help Rhodes stand up after he was shot.  Taylor continued to go toward Rhodes with the pistol.  Instead of shooting Rhodes again, Taylor kicked him and ran off.  Rhodes was treated at Forrest General Hospital, where doctors repaired his liver and colon.  Rhodes's ex-wife Sylvia Hathorn testified that she heard the gunshots from inside her apartment.  She then heard someone say, "That [man] done shot Red."  When Sylvia ran outside to get to Rhodes, Taylor passed her while holding a black gun and a bag.  Sylvia then called 911.  When police arrived, Rhodes told them that Taylor had shot him.

¶4.    Taylor was arrested on the same day (March, 25, 2015) for aggravated assault with a deadly weapon.  Taylor was indicted on December 15, 2016; however, Taylor would not stand trial on the charge until 2,883 days (nearly eight years) later, on February 14, 2023.

¶5.    Because Taylor's claim in this appeal is that his right to a speedy trial was violated,

it is important that we also include other significant dates that occurred between the date of Taylor's arrest and the date of his trial.

¶6. As previously stated, the alleged crime at hand occurred on March 25, 2015. In July 2015, Taylor was indicted in Jefferson Davis County for a separate charge of aggravated assault (Circuit Court Case Number 1:15-cr-00022). The State was ready for a March 2016 trial in *that* case and had issued subpoenas to witnesses; however, after Taylor was arrested for aggravated assault for the July 2015 offense, the State and Taylor became involved in plea negotiations for both of his charges. Apparently, the plea negotiations broke down. Then on December 15, 2016, after having posted a bond set on October 13, 2016, Taylor was indicted on the instant aggravated assault charge and "no-bonded because he had a pre-existing charge."

¶7. On June 14, 2017, an order was entered granting Taylor's ore tenus motion requesting a mental evaluation. Forensic Services of the Mississippi State Hospital at Whitfield (Whitfield), where Taylor's mental evaluation was directed to be conducted, was unable to complete the evaluation in a timely manner. Therefore, on March 1, 2018, Taylor again requested a mental evaluation, and on March 9, 2018, the trial court amended its order to reflect that Dr. Beverly Smallwood would conduct the mental evaluation instead of personnel at Whitfield "at the earliest date possible." After receiving the forensic report containing Taylor's evaluation, the trial court entered an order finding Taylor competent to stand trial on October 4, 2018.

¶8. On August 19, 2019, the trial court, on its own motion, ordered Taylor to undergo a

3

second mental evaluation. Even though the court previously found Taylor to be competent to stand trial, the second mental evaluation was requested by the circuit court "based upon the [c]ourt's observations of the Defendant's conduct and behavior, and based upon verbal reports of the Defendant's recent conduct and behavior in jail." An order setting trial for August 21, 2019, had been previously entered on March 13, 2019. However, due to the second order for a mental evaluation, the trial court continued the trial date to August 24, 2020. A second order finding Taylor competent was entered by the trial court on August 17, 2020. Subsequently, due to the COVID-19 pandemic, on January 14, 2021, the trial court continued Taylor's trial date from August 24, 2020, to February 2, 2021, after he filed a motion requesting, inter alia, a speedy trial. A second continuance order (still due to COVID-19) followed on August 6, 2021, resetting the trial date to February 15, 2022.

¶9. The next day, on September 22, 2021, the trial court held a hearing on Taylor's pro se letter that he wrote to the circuit clerk, in which Taylor argued that the charge against him should be dismissed due to his right to a speedy trial being violated. At that hearing, Taylor requested another mental evaluation, and the trial court ordered a third mental evaluation, stating that "after interacting with and observing the Defendant in open court and *at the urging* of defense counsel, the Court will order the Defendant be mentally evaluated again." (Emphasis added). A continuance order was later entered on February 2, 2022, continuing the trial date to August 29, 2022, to allow time for the third mental evaluation to occur and the results to be received. On July 11, 2022, the trial court entered another order finding Taylor competent and issued an order on September 13, 2022, setting trial for February 14,

2023. Meanwhile, also in September 2022, Taylor went to trial for charges of attempted murder and possession of controlled substances in Jefferson Davis County Circuit Court Case Number 1:19-cr-00073.

¶10.    Taylor's trial for the present case was held on February 14, 2023. A jury convicted Taylor of aggravated assault with a deadly weapon for causing serious bodily injury to Rhodes. Taylor was then sentenced by the court to serve twenty years in the custody of the MDOC. This sentence was ordered to run consecutively to the sentence given to Taylor in Case Number 1:19-cr-00073.[1]    Following his trial, Taylor moved for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The trial court denied this motion. Taylor subsequently filed a motion to dismiss on the basis of a "lack of constitutional and/or statutory speedy trial," which the trial court also denied. Taylor now appeals his conviction and sentence, claiming a violation of his constitutional right to a speedy trial.

## STANDARD OF REVIEW

¶11.    "Review of a speedy trial claim encompasses a fact question of whether the trial delay rose from good cause." *Giles v. State*, 306 So. 3d 830, 835 (¶9) (Miss. Ct. App. 2020) (quoting *DeLoach v. State*, 722 So. 2d 512, 516 (¶12) (Miss. 1998)). When an accused raises a speedy trial violation before the trial court, the judge must consider the questions of "whether there was 'good cause' for a delay" and whether "the defendant has been prejudiced by any delay." *Berryman v. State*, 337 So. 3d 1116, 1127 (¶33) (Miss. Ct. App.

---

[1] Taylor's appeal of the conviction in Case Number 1:19-cr-00073 is reported at *Taylor v. State*, 374 So. 3d 617 (Miss. Ct. App. 2023) (affirming convictions and sentences).

5

2021) (citing *State v. Woodall*, 801 So. 2d 678, 680-81, 687 (¶¶7, 29, 31) (Miss. 2001)). We will affirm the trial court's findings on good cause and prejudice if they are supported by substantial credible evidence. *Id*. "If no probative evidence supports the trial court's finding of good cause, this Court will ordinarily reverse." *Giles*, 306 So. 3d at 835 (¶9) (quoting *DeLoach*, 722 So. 2d at 516 (¶12)).

## DISCUSSION

¶12. The sole issue is whether Taylor's right to speedy trial was violated. Criminal defendants are guaranteed the right to a speedy trial by the United States and Mississippi Constitutions. U.S. Const. amend. VI; Miss. Const. art. 3, § 26. As established in *Bateman v. State*, 125 So. 3d 616, 628-29 (¶40) (Miss. 2013), we must consider the totality of the circumstances in determining whether a speedy-trial violation occurred. The United States Supreme Court developed a four-part test to determine if a defendant's right to a speedy trial was violated. *Bateman v. State*, 125 So. 3d 616, 628 (¶40) (Miss. 2013) (citing *Barker v. Wingo*, 407 U.S. 514 (1972)). "The relevant factors to be considered are: (1) the length of delay; (2) the reason for delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant has been prejudiced by the delay." *Id*. When the trial court does not articulate findings of fact, this Court "act[s] de novo in performing the *Barker* analysis." *DeLoach*, 722 So. 2d at 516 (¶15). "This Court looks at the totality of the circumstances, and no [*Barker*] factor alone is dispositive." *Thomas v. State*, 48 So. 3d 460, 477 (¶42) (Miss. 2010) (citing *Price v. State*, 898 So. 2d 641, 648 (¶11) (Miss. 2005)); *see also Bateman*, 125 So. 3d at 633 (¶59) ("After reviewing all of the factors relevant to the

6

analysis of a speedy-trial claim, we must balance each factor along with other relevant circumstances.").

## I. Length of Delay

¶13.    The Mississippi Supreme Court has held that the right to a speedy trial attaches "at the time of a formal indictment or information or else the actual restraints imposed by arrest and holding to a criminal charge." *Johnson v. State*, 235 So. 3d 1404, 1417 (¶45) (Miss. 2017). Our supreme court has further held a delay of eight months or longer between the date of arrest and the defendant's trial is presumptively prejudicial. *Ward v. State*, 346 So. 3d 868, 870 (¶6) (Miss. 2022). "A presumptively prejudicial delay acts as a triggering mechanism for conducting" the balancing test set out by the United States Supreme Court in *Barker*. *Id*.

¶14.    Taylor was arrested on March 25, 2015, for aggravated assault and indicted on December 15, 2016. Taylor's trial began on February 14, 2023. Because the period between Taylor's arrest and his trial exceeded eight months, it is presumptively prejudicial. Therefore, a *Barker* analysis is triggered, "and the burden of persuasion shifts to the State to establish good cause for the delay." *Johnson v. State*, 68 So. 3d 1239, 1242 (¶8) (Miss. 2011).

## II. Reason for Delay

¶15.    "[D]ifferent reasons for delay are assigned different weights." *Williams v. State*, 305 So. 3d 1122, 1132 (¶31) (Miss. 2020). "Deliberate attempts to delay the trial to hamper the defense are weighted heavily against the government." *Id*. "More neutral reasons for the delay, such as negligence or overcrowded courts, are weighted against the government, albeit

7

less heavily." *Id*. "Delays caused by the defense, such as requests for continuances, will toll the running of the speedy-trial clock for the length of time attributable to the continuance." *Courtney v. State*, 275 So. 3d 1032, 1042 (¶27) (Miss. 2019); *see also Brewer v. State*, 725 So. 2d 106, 119 (¶55) (Miss. 1998) (finding that time which passes during the consideration of numerous defense motions does not count against the State). If "the record is silent regarding the reason for the delay, then the time is counted against the State because the State bears the risk of non-persuasion on the good cause issue." *Harris v. State*, 311 So. 3d 638, 665 (¶80) (Miss. Ct. App. 2020). However, delays before an indictment are considered investigative delays, and an "investigative delay is fundamentally unlike delay undertaken by the government solely to gain tactical advantage over the accused." *Id*. And when the trial court has found good cause for the delay, the finding "will be left undisturbed where there is in the record substantial credible evidence from which it could have been made." *Walton v. State*, 678 So. 2d 645, 648-49 (Miss. 1996); *accord McNeal v. State*, 617 So. 2d 999, 1007 (Miss. 1993); *Folk v. State*, 576 So. 2d 1243, 1247 (Miss. 1991).

### a. Pre-Indictment

¶16.    Taylor was arrested on March 25, 2015, but his trial did not begin until February 14, 2023. This means approximately 2,883 days passed from the day of his arrest to the start of his trial. However, Taylor was not indicted until December 15, 2016. This occurred approximately 631 days after his arrest. As this Court has previously held, delays that occur before the indictment are considered "investigative delays." *Harris*, 311 So. 3d at 665 (¶80). "Since investigative delays are considered more neutral reasons for delay, they should be

8

weighed only slightly against the State." *Bradshaw v. State*, 371 So. 3d 822, 835 (¶33) (Miss. Ct. App. 2023) (citation omitted) (citing *Williams*, 305 So. 3d at 1132 (¶31)). In this instance, the period between the arrest and indictment was lengthy due to the plea negotiations between Taylor and the State regarding Taylor's other aggravated assault charge in Case Number 1:15-cr-00022. As our supreme court has previously recognized, "allowing time for plea negotiations to continue[] cannot be weighed against the State in a *Barker* analysis." *Graham v. State*, 185 So. 3d 992, 1006 (¶43) (Miss. 2016) (citing *Taylor v. State*, 672 So. 2d 1246, 1259 (Miss. 1996)). Here, the State attempted plea negotiations with Taylor for the charged crime in this case along with Case Number 1:15-cr-00022. Therefore, the 631-day investigative delay in this case tolled the speedy trial clock and does not count against either party because this period was not used as a tactic by the State to take advantage of Taylor, as explained in *Harris*, 311 So. 3d at 665 (¶80), and, instead, was used in an attempt to help Taylor with plea negotiations.

### b. Post-Indictment

¶17. Not including the 631 days of investigative delay, 2,252 days post-indictment still must be considered. From the time Taylor was indicted on December 15, 2016, to the time the first action in this case was taken on June 14, 2017, when he requested his first mental evaluation, 182 days had passed. Because the State has the burden of proof and did not address this period of delay, it will be weighed against the State. *See Williams*, 305 So. 3d at 1132 (¶31). "But [Taylor] does not argue nor does the record show anything more than neglect by the State or trial court. So while this delay weighs against the State, it is not

weighted as heavily as an intentional delay." *Id*. at 1132-33 (¶35).

¶18.   After Taylor was indicted, his initial trial date was set for August 21, 2019. However, on June 14, 2017, Taylor requested a mental evaluation to be conducted on himself to ensure that he was fit to stand trial. *See Perry v. State*, 233 So. 3d 750, 757 (¶15) (Miss. 2017) (holding that "delay attributable to obtaining a mental evaluation requested by the defense is not counted against the State" (citing *Rowsey v. State*, 188 So. 3d 486, 495 (¶26) (Miss. 2015))). The trial court granted this motion. For reasons not caused by either Taylor or the State, the mental evaluation was not conducted in a timely manner at Whitfield. Therefore, on March 1, 2018, the trial court amended its order for the evaluation to be completed by Dr. Smallwood in place of personnel at Whitfield "at the earliest date possible." The trial court entered its order on October 4, 2018, finding Taylor competent to stand trial.

¶19.   Following Taylor's first request for a mental evaluation, 477 days passed before the trial court entered its order finding Taylor competent to stand trial. Because the mental evaluation was requested by Taylor, this 477-day period of delay is weighed against him.

¶20.   After the trial court found Taylor competent, another 319 days passed before any other action was taken in the case. As previously explained, because the State did not provide evidence to validate this 319-day delay, it will be weighed slightly against the State.

¶21.   On August 19, 2019, the trial court, on its own motion, ordered Taylor to undergo a second mental evaluation. On August 17, 2020 the trial court judge signed an order finding Taylor competent to stand trial. This 364-day period of delay was caused by the trial court and should not weigh against Taylor or the State.

10

¶22. Well before the trial court entered its order finding Taylor competent, the nation was facing a state of emergency once the COVID-19 pandemic had been declared. For this reason, on August 5, 2020, the trial court had continued Taylor's case to February 2, 2021, "[d]ue to the health and safety concerns posed by the COVID-19 pandemic." Two more continuances were ordered by the trial court due to COVID-19: one on January 14, 2021, and the other on August 6, 2021.

¶23. This Court recently stated that "the resulting delay from the COVID-19 pandemic is not weighed against either party." *Martinez v. State*, 386 So. 3d 394, 403 (¶12) (Miss. Ct. App. 2024); *see* Emergency Administrative Order–2, *In re Emergency Order Related to Coronavirus (COVID-19)*, No. 2020-AD-00001-SCT (Miss. Mar. 15, 2020) (authorizing judges "to postpone any jury trials . . . scheduled through May 15, 2020"); *see also Berryman*, 337 So. 3d at 1129 (¶44) ("No trials could be held during the next scheduled term of court in April 2020 because MDOC was not transporting prisoners due to the COVID-19 pandemic."). Thus, continuances caused by COVID-19 are neutral and weigh more in favor of the State, instead of against either party. Here, we would not count from the date of the first continuance order on August 5, 2020, because it overlapped with the period of time attributable to the trial court for requesting a mental evaluation. Therefore, we would calculate this period from the day after the trial court entered its second order finding Taylor competent on August 18, 2020, to September 22, 2021, the next time any other action not related to COVID-19 occurred. During this period, 400 days passed. Because we have found that COVID-19 delays are neutral, this delay of 400 days does not weigh against

11

Taylor or the State.

¶24. On September 22, 2021, the trial court held a hearing on Taylor's motion to dismiss on the grounds of a speedy trial violation. During this hearing, Taylor requested another mental evaluation. The mental evaluation was not conducted by Whitfield in a timely matter, so the trial court entered another order of continuance on February 2, 2022, to allow the mental evaluation to be completed. The trial court entered its third order finding Taylor competent on July 11, 2022. By requesting this mental evaluation, Taylor caused another 292-day delay in his case, and this 292-day delay will be weighed against him, not the State.

¶25. Subsequently, the trial court found this case was ripe for trial, and on September 13, 2022, the trial court entered an order setting trial for February 14, 2023, which was the next available date on the court's docket. This schedule added another 218-day delay from the date the trial court deemed Taylor competent to the date his trial was set to begin. Because this 218-day delay was due to the court's docket being full, this period of delay would be at the fault of the court and is not attributable to Taylor or the State.

¶26. The entire delay that Taylor claims occurred (from the time he was arrested to the day his trial began) is 2,883 days. As broken down above, approximately 501 of those days should be weighed against the State because the State did not provide evidence as to why these periods of delay occurred.

¶27. Further, 769 days of the delay are attributable to Taylor. Taylor requested a mental evaluation two different times, which caused lengthy delays both times. The total 769 days of delay for these evaluations are weighed solely and heavily against Taylor because by

12

requesting these evaluations, the speedy trial clock was tolled.

¶28.    Lastly, the remaining 1,613 days of delay are attributable to neutral reasons or the trial court.  The delays caused by the trial court were either a product of its own request to have a mental evaluation conducted on Taylor or a product of the COVID-19 pandemic.  None of this 1,613-day period of delay weighs against either Taylor or the State.

¶29.    Immediately following trial, Taylor filed another motion seeking an acquittal by JNOV or a new trial upon remand.  In the trial court's order denying this motion, the trial court stated:

> While the court finds there was an inordinate delay in bringing Mr. Taylor trial in this Cause, with approximately 2883 days passing between the date of his arrest and his eventual trial on February 14, 2023, the court previously found there was no speedy trial violation between the date of Taylor's arrest and September 22, 2021.  After reviewing the chronology in this Cause from that date, the court finds the trial delays or continuances are not attributable to the State, but attributable to continuances due to COVID-19 numbers, waiting for psychiatric evaluation, multiple substitutions of defense counsel which had occurred over time, and his being tried in the September 2022 court term in another case.

¶30.    We agree with the trial court that the almost eight-year delay was disproportionately large; however, we cannot deem this lengthy delay as a violation of Taylor's right to a speedy trial because of the totality of the circumstances of the facts at hand.  Out of the 2,883 days, approximately 501 days were attributable to the State, 769 days were attributable to Taylor, and 1,613 days were attributable to neutral reasons or acts of the court itself.  Even though 501 days of the delay can be attributed to the State because it did not give explanations as to why those periods of delay occurred, this will not weigh against the State as heavily as an intentional delay because Taylor "does not argue nor does the record show anything more

13

than neglect by the State or trial court." *Williams*, 305 So. 3d at 1132-33 (¶35). Nothing in the record shows that the State made deliberate attempts to hamper Taylor's defense, which is why the 501 days are not weighed heavily against the State. On the contrary, Taylor actively delayed his case even after asserting his right to a speedy trial, which will be discussed below. Therefore, the 769 days of delay on Taylor's behalf weigh against him heavily. The remaining 1,613 days are due to neutral reasons or acts of the court and do not count against Taylor or the State.

### III. Assertion of Right to a Speedy Trial

¶31. The Mississippi Supreme Court has held that "[a]lthough it is the State's duty to ensure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right." *Taylor v. State*, 162 So. 3d 780, 785 (¶10) (Miss. 2015) (quoting *Bateman*, 125 So. 3d at 630 (¶49)). A "failure to demand a speedy trial between . . . arrest and indictment is 'critical'" to a speedy-trial analysis. *Id.* The defendant's "failure to assert the right will make it difficult for [him] to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 532.

¶32. In Taylor's appellate brief, he claims to have asserted his right to a speedy trial multiple times. However, Taylor only truly asserted his right to a speedy trial once, which was in his motion that was filed on September 9, 2020. Taylor's letter to the circuit court clerk and his motion to dismiss for lack of speedy trial both were seeking dismissal based on an alleged speedy trial violation, not asserting his right to a speedy trial. As our supreme court has held, a request for dismissal is separate and distinct from an assertion of right. *See*

14

*Franklin v. State*, 136 So. 3d 1021, 1035 (¶54) (Miss. 2014).

¶33. Even when Taylor asserted his right to a speedy trial in his September 9, 2020 motion, eighteen months had already passed since the first order setting a trial date had been entered, and 1,996 days had passed after his arrest. After asserting his right to a speedy trial, Taylor requested another mental evaluation, tried to fire his attorneys on three separate occasions (once on the day before his trial), and twice sought the recusal of the trial judge. Also, "at the urging of and on the ore tenus motion of defense counsel," the trial court conducted another competency hearing on September 22, 2021, and the results prompted the trial court to enter an order for another mental health evaluation.

¶34. These actions undercut Taylor's assertions of his speedy trial right because our supreme court has held "the invocation of the right to a speedy trial is actually a request to go to trial." *Rowsey*, 188 So. 3d at 495 (¶28) (holding that the defendant failed to properly assert his right to speedy trial when he was unable to go to trial because he was waiting for the mental evaluation he requested). Here, when Taylor asserted his right to a speedy trial, he did nothing to further the case to trial. If anything, he delayed the case from going to trial even more by requesting a subsequent mental evaluation after two had already been conducted.

¶35. Since the *Barker* analysis is a balancing test, this third factor weighs against Taylor because even though Taylor asserted his right to a speedy trial, he further delayed the process by requesting another mental evaluation, trying to fire his attorneys, and seeking to have the trial judge recuse.

15

## IV. Prejudice

¶36. "To determine whether the delay resulted in actual prejudice, the Court considers three interests that the right to a speedy trial was meant to protect: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" *Taylor v. State*, 162 So. 3d 780, 787 (¶16) (Miss. 2015) (quoting *Jenkins v. State*, 947 So. 2d 270, 277 (¶21) (Miss. 2006); *Barker*, 407 U.S. at 532)). "Of these three interests, the last is the most important; and when violated, [it is] most prejudicial to the defendant." *Collins v. State*, 232 So. 3d 739, 746 (¶26) (Miss. Ct. App. 2017) (quoting *Hersick v. State*, 904 So. 2d 116, 123 (¶18) (Miss. 2004)).

¶37. "Generally, proof of prejudice entails the loss of evidence, death of witnesses, or staleness of an investigation." *McCormick v. State*, 183 So. 3d 898, 903 (¶21) (Miss. Ct. App. 2015) (quoting *Sharp v. State*, 786 So. 2d 372, 381(¶19) (Miss. 2001)). The defendant "bears the burden of showing actual prejudice, since the defendant is clearly in the best position to show prejudice under this prong." *Reed v. State*, 191 So. 3d 134, 141 (¶19) (Miss. Ct. App. 2016) (internal quotation marks omitted).

¶38. In the case sub judice, Taylor has not shown any actual prejudice. In his appellate brief, Taylor claims that the length of the delay being presumptively prejudicial under the first *Barker* factor shows actual prejudice under the fourth *Barker* factor. However, this is a misapplication of *Barker*. *See Graham*, 185 So. 3d at 1005 (¶41) ("[L]et us be clear[:] when the delay is presumptively prejudicial that does not mean that *actual* prejudice to the defendant exists. Rather, actual prejudice is determined at a different point in the *Barker*

16

analysis." (quoting *Johnson v. State*, 68 So. 3d 1239, 1242 (¶7) (Miss. 2011))).

¶39. In Taylor's September 13, 2021 pro se letter to the circuit court seeking dismissal, all Taylor claimed was that the delay in this case as well as two other cases he was facing at the time was "past unjust." Further, in his motion to dismiss that was filed on February 2, 2023, Taylor's only assertion was that the "delay has caused great and irreparable damage to [his] right to defend himself and to otherwise obtain a fair trial and all other due process." The State responded:

> [T]he State has been ready and willing to provide a speedy trial to this Defendant upon demand for one, and in fact has given the Defendant in the first available trial term after the demand in another Cause. Now, the State is willing and able to give the Defendant a trial in this Cause and for the second consecutive trial term.

Even after the State filed this response on February 10, 2023, Taylor still did not provide any specific instances of how he had been prejudiced in the case.

¶40. Undoubtedly, pre-trial detention deprives the accused, who is innocent until proven guilty, of liberty for an indefinite amount of time. And after an extended period, the prolonged detention brings about certain collateral consequences. However, here Taylor has failed to articulate with any degree of specificity how his delay impaired his defense, which is the most important consideration. Taylor also has not argued that he lost evidence or witnesses during the delay. Therefore, the final factor of the *Barker* balancing test weighs against Taylor.

## CONCLUSION

¶41. After reviewing a totality of the circumstances and applying the *Barker* balancing test,

17

we find that Taylor's right to a speedy trial was not violated. Thus, we affirm the trial court's decision that Taylor's right to a speedy trial was not violated and affirm Taylor's conviction and sentence.

¶42. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR. McCARTY, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND ST. PÉ, JJ. LAWRENCE, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

**McCARTY, J., SPECIALLY CONCURRING:**

¶43. In accord with binding precedent from our Supreme Court, I agree with the majority's disposition of this case. But the extreme delay presents us with the opportunity to reassess the unworkable nature of the judicially crafted speedy trial analysis and, instead, return to a faithful observation of constitution and statute. In doing so, we honor the constitutional separation of powers between the Judiciary and the Legislature and also restore to prominence a guaranteed constitutional right.

¶44. Our Legislature enacted a speedy trial law that is as clear as it can be:

> Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court *shall be* tried no later than two hundred seventy (270) days after the accused has been arraigned.

Miss. Code Ann. § 99-17-1 (Rev. 2020) (emphasis added). "[O]ur speedy trial statute is plain and unambiguous, and it requires that the defendant be tried *no later than 270 days after arraignment* unless good cause be shown." *Polk v. State*, 205 So. 3d 1157, 1167 (¶44) (Miss. Ct. App. 2016) (emphasis added) (quoting *Perry v. State*, 419 So. 2d 194, 198 (Miss.

18

1982)).

¶45.    This law provides a precise definition to our more general constitutional rights to a speedy trial, which guarantee the right in broad terms: "in all prosecutions by indictment or information," an accused has the right to "a speedy and public trial by an impartial jury of the county where the offense was committed." Miss. Const. art. 3, § 26; *see also* U.S. Const. amend. VI.

¶46.    Importantly, the 270-day time frame was set by the legislative branch of government, not our judicial branch.  The complicated analyses deployed in recent years are purely creations of precedent and cannot be found in the plain text of the federal or state constitutions or Mississippi statutory law.  Our laws do not lend themselves to numerous exceptions or outline how different delays are supposed to be weighed—and against whom—these concepts are simply nowhere to be found in codified text.  In creating these various tests and measures, our jurisprudence has not only made an unworkable morass of our constitutional rights, but it has completely hollowed them out.  This essentially deletes them from our constitutions and ignores the plain language of statutory law.

¶47.    Our Supreme Court has recently rejected a related test of this nature in post-conviction relief cases to conform to Legislative prerogative.  After years of allowing a judicially crafted "exception" to the three-year time-bar lawfully enacted by the Legislature, the Supreme Court overruled the caselaw creating it.  *Howell v. State*, 358 So. 3d 613, 616 (¶12) (Miss. 2023).  The *Howell* Court wrote that "[t]he statute of limitations is a substantive, legislatively enacted law and not procedural, and our judicial pronouncements regarding how we would

19

apply judicial procedure in the face of claims of fundamental rights should hold no weight." *Id*. at (¶10). For "[c]ourts have a 'constitutional mandate to faithfully apply the provisions of constitutionally enacted legislation.'" *Id*. (quoting *Tallahatchie Gen. Hosp. v. Howe*, 49 So. 3d 86, 92 (¶17) (Miss. 2010)).

¶48. Critically, the *Howell* Court ruled that "we are admonished and have clearly in mind that penal statutes must be strictly construed, and that the court can neither add to nor take from them, and we cannot by judicial construction, or considerations of expediency, supply what is palpably omitted from a statute." *Id*. Ultimately, *Howell* determined that "the Supreme Court of Mississippi cannot lawfully amend or ignore constitutionally sound law enacted by the Legislature," and to the extent it had, the Court overruled numerous cases to the contrary. *Id*. at (¶12).

¶49. The same conclusion reached in *Howell* must be applied to our speedy trial jurisprudence. Just as in *Howell*, speedy trial jurisprudence has been judicially written and stands completely opposite to the Legislature's clear command that trial *shall* commence within 270 days, subject to good cause. Applying such a rule to this case would require that the case be reversed and the appellant be discharged. To do otherwise is to continue to wallow in judicially crafted exceptions that provide little protection for the rights of those facing trial and do not defer to the clear and unambiguous rule established by the Legislature.

¶50. A decade ago, former Presiding Justice Dickinson lamented that our Supreme "Court has an amazing propensity to fashion a new rule each time a defendant appears with a legitimate speedy-trial claim." *Newell v. State*, 175 So. 3d 1260, 1277-78 (¶40) (Miss. 2015)

20

(Dickinson, P.J., dissenting). Unfortunately, the modern state of our jurisprudence highlights the correctness in his statement, but *Howell* provides a principled way forward—one that was strictly followed in the past.

¶51. In 1990, our Supreme Court discharged a defendant who was not timely tried, ruling, "The right to a speedy trial means what it says." *Flores v. State*, 574 So. 2d 1314, 1323 (Miss. 1990). The *Flores* Court declined to tinker with the plain language of our constitutions and state statute: "The duty of a defendant to request a trial is less than the duty on the state to bring the trial forward." *Id*. And the Court was unwavering in its commitment that "[t]he right itself is intricately related to the needs of well ordered society[.]" *Id*.; *see Klopfer v. North Carolina*, 386 U.S. 213, 226 (1967) (holding our Sixth Amendment right to a speedy trial "is one of the most basic rights preserved by our Constitution").

¶52. When I was privileged to first join this Court, I protested that "[i]t is certainly true that '[c]rowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable.'" *Giles v. State*, 306 So. 3d 830, 840 (¶34) (Miss. Ct. App. 2020) (McCarty, J., dissenting) (quoting *Dickey v. Florida*, 398 U.S. 30, 38 (1970)). "Yet because *some delay is inevitable* does not mean *all delay is permissible*." *Id*.

¶53. Dissenting in *Giles*, I reckoned that "we must follow the Legislature's command that criminal cases of this type have to be tried within 270 days," for our duties as judges sworn to uphold the law means "[w]e should . . . apply the law as it is written." *Id*. at 841 (¶37). I remain committed to that principle today.

¶54. It is time to return to such a well-ordered stance, and in light of the Supreme Court's

21

deference to the legislative timeline of post-conviction relief in the *Howell* decision, it is imperative our Supreme Court revisit its jurisprudence on speedy trial claims.

**McDONALD AND ST. PÉ, JJ., JOIN THIS OPINION.**